FERNANDO SIERRA BERDECÍA, SECRETARIO DEL TRABAJO DE PUERTO RICO, en representación y para beneficio de LUIS ÁLVAREZ y otros 35 obreros, querellantes y apelantes, *v.* PUERTO RICO CEREAL EXTRACTS, INC., querellada y apelada; BENITO CANTRE ET AL., querellantes y apelantes, *v.* PUERTO RICO CEREAL EXTRACTS, INC., querellada y apelada.

*Número:* 12361. *Resuelto:* 9 de agosto de 1961.

268

*Domingo Candelario, Manuel Janer Mendía,* abogados del apelante; *José R. Fournier* y *Yamil Galib Frangie,* abogados de la apelada.

Sala integrada por el Juez Asociado señor Blanco Lugo, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Unos 39 empleados de la demandada reclaman salarios al amparo del Decreto Mandatorio núm. 24 aprobado en 28 de junio de 1954 por la Junta de Salario Mínimo de Puerto Rico. Los demandantes radicaron dos querellas en el Tribunal Superior bajo la Ley núm. 10 de 14 de noviembre de 1917, según enmendada, 32 L.P.R.A. sec. 3101 y sigtes. En uno de los casos compareció el Secretario del Trabajo en representación de 36 de dichos empleados.

Por acuerdo de las partes y a tenor con la regla 42(b) de las de Enjuiciamiento Civil en vigor cuando se celebró la vista, los procedimientos en el Tribunal Superior se limi-

taron a dilucidar si el Decreto Mandatorio núm. 24 se aplicaba o no a la demandada.[1]

El tribunal a quo resolvió que el decreto no le era aplicable y declaró sin lugar las querellas. Los querellantes-apelantes hacen el siguiente señalamiento de error: "El tribunal a quo incurrió en error al resolver que la bebida conocida como *malta* no es una *cerveza sin alcohol* conforme se usa dicho término en el Decreto Mandatorio núm. 24 y que las actividades de la querellada, por circunscribirse exclusivamente a la manufactura de maltas, no están cubiertas por las disposiciones del Decreto Mandatorio núm. 24."

El Decreto Mandatorio núm. 24 en su artículo I-A (Definiciones) dispone lo siguiente: "La Industria de Cerveza a que se aplica este decreto mandatorio comprende, sin que ello se entienda como una limitación, todos los actos, procesos, operaciones y servicios que sean necesarios, incidentales o relacionados con la preparación, producción, distribución, propaganda, disposición o venta por el fabricante de cerveza de cualquier clase, con o sin alcohol." Título 29, *Reglas y Reglamentos de Puerto Rico*, Sección 245n–441.

En su artículo II, sobre aplicación del decreto, en lo pertinente, el mismo dispone: "Este decreto cubre todo trabajo o servicio que sea necesario o esté relacionado con la industria de cerveza, tal como la misma se deja definida, incluyendo la transportación que se realice por administración en vehículos del propio patrono, y todo trabajo u obra de reparación, conservación o mantenimiento, que se realice por administración, de edificios, anexos, estructuras fijas y otros inmuebles que se usen en relación con dicha industria." 29 R. R. P. R. 245n—442.

■ Habiéndose suscitado la controversia sobre el significado y aplicación de los preceptos transcritos es necesario de-

---

[1] Regla 42(*b*) de las de Enjuiciamiento Civil de 1943 sobre juicios por separado, 32 L.P.R.A., Apéndice. La regla equivalente actual es la 38.2, Reglas de Procedimiento Civil de 1958. 32 L.P.R.A., Apéndice, Suplemento.

terminar su alcance y significado, cuál fue su intención. También veremos si la demanda conocía ese significado y esa intención.([2])

Los documentos que más luz arrojan sobre este problema son las siguientes dos publicaciones del Departamento del Trabajo de Puerto Rico. Ambas publicaciones forman parte del historial del Decreto Mandatorio núm. 24. La primera es un estudio estadístico titulado "La Industria de Cerveza en Puerto Rico", Departamento del Trabajo, Junta de Salario Mínimo, Septiembre de 1953, Exhibit J-8, Junta de Salario Mínimo, Vista de 12 de noviembre de 1953. La segunda publicación es la "Determinación de Hechos, Opinión y Decreto Mandatorio núm. 24 Aplicable a la Industria de Cerveza de Puerto Rico", fechada a 28 de junio de 1954. Esta segunda publicación fue admitida en evidencia sin objeción de la demandada y fue marcada "Exhibit I" de la parte demandante, (págs. 61 a la 113 de la Transcripción de Evidencia.) La Determinación de Hechos de la Junta está predicada en gran parte en el estudio estadístico antes mencionado.

Ya hemos visto que el propio decreto establece que se propone cubrir a "la industria de cerveza" y a todos los procesos y servicios relacionados con la producción y venta de "cerveza de cualquier clase, con o sin alcohol". Veamos qué entendió la Junta por "industria de cerveza" mientras estudiaba las condiciones económicas de dicha industria antes de aprobar el Decreto Mandatorio núm. 24 y al momento de aprobarlo. También veremos si fue igual al de la Junta o distinta la interpretación de la demandada durante todo ese proceso administrativo y cuasi-legislativo.

Expresa la Determinación de Hechos que la Junta de Salario Mínimo decidió revisar los salarios de la industria

---

([2]) Como el decreto mandatorio es un documento cuasi-legislativo es propio recurrir a los criterios de interpretación que se utilizan para encontrar la intención de las leyes. Véase 2 Sutherland Statutory Construction, 3rd. ed., sec. 4007 y casos allí citados.

cervecera luego de considerar el estudio estadístico que sobre dicha industria hizo su División de Investigaciones y Estadísticas.

En su Determinación de Hechos la Junta concluyó que: "En Puerto Rico hay cuatro empresas que se dedican a la producción de cerveza. Tres se dedican a la producción de cerveza con y sin alcohol, mientras que una se dedica solamente a la producción de *cerveza sin alcohol*, generalmente conocida como *malta* y asimismo denominada en el resto de esta Determinación de Hechos y Opinión. Estas cuatro empresas emplean alrededor de 900 empleados. De éstos, alrededor de 650 son empleados de producción." (Énfasis suplido.) Más adelante, en la misma Determinación de Hechos vuelve la Junta a utilizar el siguiente lenguaje: "Los empleados en la manufactura de *cerveza sin alcohol*, generalmente conocida como *malta*," ... (T. E. 77.) (Énfasis suplido). Continuamos citando de la Determinación de Hechos: "En el estudio estadístico (Exhibit J-8) preparado por los economistas de la Junta se presenta el resultado de operaciones para el año 1952 y el estado de situación a la terminación de dicho año, de las cuatro empresas dedicadas a la manufactura de cerveza con y sin alcohol en Puerto Rico."

"En las Tablas núm. 3 y 4 se presenta el Estado de Ganancias y Pérdidas y el Estado de Coste de Ventas para la producción de cerveza con alcohol, malta y ambos productos combinados. Como se expresa anteriormente tres de las cuatro cervecerías que operan en la isla, fabrican cerveza con alcohol y malta. La otra empresa fabrica únicamente malta." (T.E. 86.)

"Durante el año 1952 las cuatro empresas objeto de estudio tuvieron ingresos montantes a $17,055,577, siendo el coste de ventas $11,311,962. El beneficio bruto fue de $5,743,615. De dicho beneficio bruto se deducen los gastos generales de venta y de administración montantes a $3,052,522 quedando un beneficio de operación de $2,691,093.

Este beneficio de operación equivale al 15.8 por ciento de las ventas y al 37.8 por ciento sobre el capital y sobrante acumulados. . ." (T. E. 87.)

Luego de resumir el extenso estudio estadístico en su Determinación de Hechos la Junta concluye que "Por las anteriores consideraciones creemos que la situación económica de la industria de cerveza en Puerto Rico provee margen suficiente para aumentar los salarios que paga a sus trabajadores." (T.E. 91.)

■ No es necesario reproducir aquí más palabras ni datos de la Determinación de Hechos para demostrar que la Junta en todo momento consideró y tuvo en mente a las cuatro compañías dedicadas a la producción de cerveza con alcohol y de cerveza sin alcohol, generalmente conocida en Puerto Rico como malta. Dichas cuatro empresas constituían en aquel entonces la industria cervecera de Puerto Rico. Las conclusiones de hecho a que llegue la Junta, actuando dentro de sus poderes, serán concluyentes en ausencia de fraude. 29 L.P.R.A. sec. 235. *Sunland Biscuit Co.* v. *Junta de Salario Mínimo*, 68 D.P.R., 371 (1948). 29 L.P.R.A. sec. 246a, Suplemento.

¿Cuáles eran esas cuatro empresas cerveceras a que constantemente se hace referencia en la Determinación de Hechos de la Junta? Expresa la Determinación de Hechos que en 3 de diciembre de 1953 se publicó en la prensa el proyecto de decreto mandatorio y se avisó por ese mismo medio que se daba un plazo de 15 días para que se formulasen por escrito objeciones al proyecto de decreto. Dentro del plazo concedido "las cuatro cervecerías de Puerto Rico conjuntamente" radicaron un escrito formulando objeciones al proyecto de decreto. (T. E. 69.) Ese escrito es uno titulado "Objeciones al Proyecto de Decreto Mandatorio núm. 24 Referente a la Industria de Cerveza en Puerto Rico", de fecha de 15 de diciembre de 1953, en el cual comparecen la *Cervecería*

*India, Inc.,* la *Cervecería Real, Inc.,* la *Corona Brewing Corp.* y la aquí demandada, *P. R. Cereal Extracts, Inc.* Firman dicho escrito los abogados de las cuatro empresas mencionadas y también lo firman bajo juramento cuatro principales ejecutivos de esas cuatro compañías. Expresan en su juramento que han leído el antecedente pliego de objeciones y que las alegaciones en él contenidas son ciertas. (Exhibit 3 de los querellantes, T. E. 113.) Continúa la Determinación de Hechos: "Terminada la vista . . . patronos y trabajadores solicitaron términos para radicar escritos exponiendo sus objeciones y enmiendas al proyecto de decreto a la luz de la prueba recibida en la audiencia . . . Los abogados de *las cuatro cervecerías* radicaron un escrito y el abogado de una de las organizaciones de trabajo también radicó un escrito." (T. E. 70.) (Énfasis suplido.)

En el escrito de 15 de diciembre de 1953, se hacen referencias frecuentes a "la industria de cerveza", "la industria" y "la industria nativa de cerveza". Más aún, en el mismo se hacen recomendaciones de enmienda a la definición de la industria de cerveza propuesta en el proyecto de decreto y en ningún momento se menciona nada en relación con excluir a la demandada del decreto. Las objeciones al proyecto del decreto levantadas en dicho memorándum tienen que ver con (1) enmiendas a la definición de la industria cervecera (sobre aspectos irrelevantes al problema que nos ocupa), (2) el tipo de salario mínimo, (3) la garantía de compensación semanal mínima y (4) otras condiciones de trabajo.

No hay duda de que la demandada era una de las cuatro compañías cerveceras que intervinieron en todo el proceso que culminó en la formulación del Decreto Mandatorio núm. 24. También es claro que la demandada compareció y actuó considerándose a sí misma como una de las cuatro empresas dedicadas a la producción en Puerto Rico de cerveza con o sin alcohol, según se utilizaron estos términos en

todo el proceso administrativo y en el Decreto Mandatorio. La interpretación de la demandada fue la misma que la de la Junta en el sentido de que la malta estaba incluida en el término "cerveza sin alcohol". [3]

Aclarada ya cual fue la intención de la Junta al formular el decreto (en el sentido de que cubriría la producción de malta) y aclarado también que las cuatro compañías, incluyendo la aquí demandada, así también lo entendieron, nos queda por considerar el siguiente punto. El perito químico que declaró en el juicio expresó que la malta no es una cerveza. (T. E. 56.) Del contexto de su declaración se desprende que el perito testificaba dentro del rigor y las limitaciones de una definición técnica. La demandada tomó la posición en el juicio de que como el decreto habla de "cerveza de cualquier clase, con o sin alcohol" y como la malta no es una cerveza por consiguiente el decreto no le aplica ya que ella sólo producía malta. Para adoptar esa

---

[3] No es necesario para resolver este caso, pero de haberlo sido probablemente hubiésemos tomado conocimiento judicial del "Memorándum Resumiendo Objeciones al Proyecto de Decreto Mandatorio núm. 24 Referente a la Industria de Cerveza en Puerto Rico" de 17 de febrero de 1954 sometido a la Junta de Salario Mínimo por las cuatro compañías, incluyendo a la demandada y de la comunicación de la demandada a la Junta sometiéndole candidatos para miembros especiales de la Junta, por estar estos documentos sujetos a fácil verificación indisputable. McCormick on Evidence, West Publishing Co., 1954, sec. 325, pág. 691; sec. 330, pág. 710 y sec. 331, pág. 712. 9 Wigmore on Evidence, 3ra. ed., 1940, sec. 2571, pág. 548. A tenor con la ley en vigor cuando se hizo el Decreto Mandatorio núm. 24, una vez que la Junta decidiese fijar o revisar salarios en una industria solicitaría mediante aviso en la prensa que los sectores patronal y obrero de esa industria (la industria cervecera en este caso) le sometiesen candidatos para dos miembros especiales de la Junta. Un miembro sería representante del sector patronal y el otro del sector obrero. La comunicación de la demandada sometiendo candidatos claramente indica que se dio por aludida como una empresa cervecera. La demandada no producía cerveza con alcohol sino la cerveza sin alcohol, generalmente conocida como malta. En el memorándum mencionado de 17 de febrero de 1954 de manera clara y repetida la demandada, conjuntamente con las otras tres compañías, asumió la posición de que era una de las empresas cerveceras que resultaría afectada por el decreto que estaba bajo estudio por la Junta.

posición tendríamos que olvidarnos de todo lo anteriormente relatado y tendríamos además que adoptar una filosofía sobre la interpretación de estatutos y de reglamentos que no estamos dispuestos a seguir. En primer lugar, habiendo encontrado la intención de la Junta que formuló el decreto es nuestro deber interpretarlo en la forma que conduzca a lograr su propósito.(⁴) Reafirma esa determinación el hecho de que nos hemos cerciorado de que la demandada conocía esa intención y participó de esa misma interpretación durante el proceso administrativo y cuasi-legislativo que produjo el decreto en cuestión. En segundo lugar señalamos que la Junta que aprobó el decreto no estaba constituida por técnicos químicos sino por cinco ciudadanos de diversas vocaciones y que por lo tanto sería irreal pretender que utilizaron las palabras de la definición en un sentido técnico y no en su sentido corriente y usual.(⁵) Art. 15, Código Civil, 31 L.P.R.A. sec. 15.

 No es necesario repetir aquí una exégesis de los principios de interpretación de leyes y reglamentos. Baste con señalar que las leyes y los reglamentos tienen su propósito y constituyen la política pública formulada por los organismos legislativos y cuasi-legislativos del Estado. Ya en *Vivaldi* v. *Mariani*, 10 D.P.R. 444, 446 (1906) este Tribunal expresó que "Al interpretarse una ley deberá tenerse

---

(⁴) Sutherland op. cit. ibid.

(⁵) La Junta que entendió en el Decreto Mandatorio núm. 24 quedó constituida como sigue: Sr. Frank Zorrilla, su Presidente y representante del interés público, Sres. Jesús M. Benítez y Antonio Escudero, Jr., como representantes del sector patronal, y Sres. Lorenzo Fernández y Danilo Valle como representantes del sector obrero. Los señores Zorrilla, Benítez y Fernández eran los miembros permanentes de la Junta y los Sres. Escudero y Valle fueron los miembros especiales y ambos provenían de la industria cervecera; el Sr. Escudero del sector patronal y el Sr. Valle del sector obrero. La Junta que aprobó el decreto estaba constituida bajo la autoridad de la Ley de Salario Mínimo vigente entonces, Ley núm. 8 de 5 de abril de 1951, 29 L.P.R.A. sec. 211 y sigtes. La ley actual sobre la materia es la Ley núm. 96 de 26 de junio de 1956, 29 L.P.R.A. sec. 245 y sigtes.

presente siempre la intención que dio el legislador a su promulgación y no debe anularse por una sujeción demasiado estricta a las palabras usadas . . ." y en *Pueblo* v. *Ramos,* 18 D.P.R., 993, 1004 (1912) expresamos que la regla fundamental de interpretación a la cual todas las demás están subordinadas es la de que la ley debe interpretarse de conformidad con la intención de los que la hicieron. Art. 19, Código Civil, 31 L.P.R.A. sec. 19. Más recientemente, en *Calaf* v. *Secretario de Hacienda,* 76 D.P.R. 577, 584 (1954) dijimos que debe prevalecer la intención del legislador sobre la disposición literal del estatuto que esté en conflicto con esa intención. "Aunque la interpretación es arte y no ciencia y ninguna teoría jamás proporciona una receta infalible para establecer el sentido correcto y preciso de las leyes, no es menos cierto que . . . el más destacado y fundamental resorte de la interpretación racional es el elemento teleológico, derivado del fin de la ley . . . ya que ésta . . . es siempre medio para obtener un fin, y, por consiguiente, ha de ser interpretada . . . atribuyéndole el sentido que mejor responda a la realización del resultado que por ella se quiere obtener." *Borinquen Furniture* v. *Tribunal,* 78 D.P.R. 901, 905 (1956) y autoridades allí citadas.

La jurisprudencia ha trascendido su primitiva etapa formalista durante la cual cada palabra era un talismán y el menor error era fatal. *Wood* v. *Duff Gordon,* 222 N. Y. 88, 91; 118 N. E. 214 (1917). Cardozo, *"The Nature of the Judicial Process"* (1939) 100.

Por los fundamentos anteriormente expuestos *se revocará la sentencia apelada y se devolverá el caso al Tribunal Superior para procedimientos ulteriores no inconsistentes con esta opinión.*