Cordero, Juez Ponente
*837 TEXTO COMPLETO DE LA SENTENCIA
Los codemandados de epígrafe (distribuidores-mayoristas) oportunamente presentaron ante este Tribunal peticiones de certiorari y solicitaron la revocación de una orden emitida el 23 de octubre de 2000, notificada el 24 de octubre de 2000; y de una resolución emitida el 4 de octubre de 2000, notificada el 10 de octubre de 2000, por el Tribunal de Primera Instancia, Sala Superior de San Juan. (Por tratarse del mismo caso y las mismas partes, motu proprio, se ordenó la consolidación de los recursos aquí presentados según Resolución emitida por este Tribunal el 6 de diciembre de 2000). Mediante la orden emitida el 23 de octubre de 2000, el Tribunal de Primera Instancia declaró no ha lugar las Mociones de Reconsideración presentada por los distribuidores-mayoristas. En la resolución emitida el 4 de octubre de 2000, el Tribunal de Primera Instancia declaró sin lugar las mociones en oposición a la certificación de pleito de clase y certificó el pleito como uno de clase.
Por los fundamentos que expondremos, expedimos los autos de certiorari y revocamos la orden y la Resolución recurrida.
El 21 de agosto de 1996, se aprobó la Ley 157, la cual entró en vigor el 1 de enero de 1997. El Artículo 5 (a) de esta ley establece que:
"Todo distribuidor-mayorista vendrá obligado a pasar, transferir y reconocer al detallista, cualquier ajuste por temperatura recibido en su origen por dicho distribuidor-mayorista por la cantidad de gasolina y/o combustibles especiales comprados. Este ajuste por temperatura será a su vez reconocido y transferido por el *838 detallista al consumidor mediante una rebaja en los precios de la venta al detal. El Departamento de Asuntos del Consumidor establecerá mediante reglamento, en un plazo de ciento veinte (120) días al momento de la aprobación d.e esta ley, un sistema que garantice que el consumidor reciba dicha transferencia. Disponiéndose que no se comenzará con la transferencia del ajuste por temperatura hasta que no se haya establecido este mecanismo". 23 L.P.R.A. sec. 1105A. (Enfasis suplido.)
El Departamento de Asuntos del Consumidor ("DACO") no adoptó el reglamento dentro del plazo prescrito por la ley. Los distribuidores-mayoristas continuaron vendiendo la gasolina y los combustibles especiales sin la correspondiente rebaja del ajuste por temperatura. 
Así las cosas, el 6 de marzo de 2000, la parte demandante de epígrafe ("Trilla Piñero"), en representación de los consumidores de gasolina y diesel que adquirieron estos productos de los detallistas durante el período comprendido desde el vencimiento del plazo para que DACO adoptara el reglamento hasta el presente, presentó ante el Tribunal de Primera Instancia una acción civil al amparo de la Ley Núm. 157 contra los distribuidores-mayoristas. En la misma, Trilla Piñero alegó que los consumidores han pagado a los detallistas la gasolina y el diesel durante este período sin recibir el ajuste por temperatura. La demanda adujo cinco causas de acción; la primera en contra del Secretario del DACO para que adopte el reglamento requerido por la Ley Núm. 157 para que comience la transferencia del ajuste por temperatura a los consumidores asegurando a éstos una rebaja en el precio de la gasolina y del diesel. La segunda constituye una reclamación en daños y perjuicios contra el Estado Libre Asociado por los daños sufridos por los consumidores debido a la omisión del Secretario al no adoptar el reglamento prescrito por la Ley. La tercera, cuarta y quinta causa de acción son contra los distribuidores-mayoristas de gasolina y diesel para que una vez aprobado el reglamento por DACO, procedan a restituir a los consumidores el sobreprecio cobrado en la venta de esos productos desde que se venció el plazo para la adopción del reglamento hasta el presente, a través de una rebaja en los precios.
El 15 de mayo de 2000, la Shell Company (P.R.) Limited ("SHELL") y Esso Standard Oil Co. ("ESSO") presentaron sendas mociones de desestimación. ESSO planteó que la Ley Núm. 157: (1) no crea una causa de acción privada a favor de Trilla Piñero, (2) su letra es clara y libre de toda ambigüedad y su lectura refleja que el ajuste por temperatura no comenzaba hasta que DACO creara el reglamento para garantizar que el consumidor recibiera el ajuste, (3) su historial legislativo refleja su intención de sujetar la transferencia del ajuste por temperatura a un mecanismo creado por DACO para garantizar que el consumidor recibiera el ajuste, y (4) DACO reconocía que la transferencia del ajuste por temperatura no entraría en vigor hasta la aprobación de un reglamento para garantizar que él consumidor recibiera el ajuste. Por su parte, SHELL planteó que el pleito debía desestimarse, ya que: (1) el Artículo 5A de la Ley Núm. 157 no entraría en vigor hasta que DACO promulgara el reglamento que regule la transfrerencia de ajuste por temperatura, (2) el caso carece del requisito de madurez, y (3) los demandantes carecen de legitimación activa para entablar la demanda. Texaco Puerto Rico, Inc. ("TEXACO") presentó su moción de desestimación el 26 de mayo de 2000. En síntesis, TEXACO planteó que la causa de acción presentada es prematura, toda vez que Trilla Piñero no puede solicitar el cumplimiento de una obligación legal sujeta a la aprobación y vigencia del reglamento que la Ley Núm. 157 ordena crear al DACO. 
Las mociones de desestimación de Gasolinas de Puerto Rico Corp., Toral Petroleum Corp. y Cia. Petrolera del Caribe, Inc. incorporaron por referencia las alegaciones y los argumentos presentados por SHELL y ESSO. El 14 de julio de 2000, el Secretario del DACO y el Estado Libre Asociado presentaron su moción de desestimación. Estos plantearon argumentos que a su vez se plantean en la moción de desestimación de SHELL.
El 16 de junio de 2000, Trilla Piñero replicó a las mociones de desestimación presentadas. TEXACO, SHELL y ESSO presentaron sus dúplicas a la réplica de Trilla Piñero los días 3 y 21 de julio de 2000 y el 7 de agosto de 2000, respectivamente.
El 18 de septiembre de 2000, notificada el 27 de septiembre de 2000, el tribunal de instancia emitió *839 resolución declarando sin lugar las solicitudes de desestimación presentada por los distribuidores-mayoristas. Concluyó el tribunal que aun cuando las obligaciones impuestas sobre los distribuidores-mayoristas por la Ley Núm. 157 están sujetas a una condición suspensiva, Trilla Piñero tiene derecho a presentar su reclamo en un intento de conservar sus derechos bajo la Ley Núm. 157 de conformidad con el Artículo 1074 del Código Civil de Puerto Rico, 31 L.P.R.A. sección 3049. El tribunal de instancia resolvió, además, que DACO tiene un deber ministerial de aprobar el reglamento y, ante el incumplimiento de DACO de reglamentar la transferencia del ajuste por temperatura, el único remedio que tenía Trilla Piñero es acudir a la rama judicial para que ésta determine si DACO estaba obligada o no a reglamentar, y las consecuencias, si alguna, que pudieran derivarse para los distribuidores-mayoristas. Finalmente, la resolución ordena a los distribuidores-mayoristas a que contesten el descubrimiento de prueba cursado por Trilla Piñero.
Inconformes, el 13 de octubre de 2000, ESSO, SHELL y Cía. Petrolera del Caribe presentaron por separado sus solicitudes de reconsideración. El 23 de octubre de 2000, notificada el 24 de octubre de 2000, el tribunal de instancia declaró las mismas no ha lugar.
B
Concurrentemente con los trámites de desestimación arriba señalados, el 15 de mayo de 2000, ESSO presentó una oposición a que el pleito fuese certificado como uno de clase, a la cual se unieron por referencia las codemandadas Gasolinas de Puerto Rico Corp. y Toral Petroleum Corp.
El 28 de junio de 2000, Trilla Piñero presentó un escrito titulado "Réplica en Oposición a Certificación de Clase y Solicitud de Certificación" mediante la cual solicitaron que el pleito fuera certificado como uno de clase.
El 21 de julio de 2000, SHELL presentó su "Oposición a Certificación de Pleito como uno de Clase" en la cual argumentó que no procedía la certificación solicitada porque la parte demandante (Trilla Piñero) no cumplía con los requisitos de la Regla 20 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 20, que rige la materia sobre los pleitos de clase.
El 26 de julio de 2000, ESSO presentó una solicitud de prórroga para presentar su dúplica a la réplica presentada por Trilla Piñero. Mediante la misma, ESSO solicitó al tribunal de instancia que en vista de las mociones de desestimación pendientes, paralizara el descubrimiento de prueba relacionado a la solicitud de certificación del pleito de clase y que le concediera un término de 30 días a partir de que finalizara el descubrimiento de prueba para presentar su dúplica. Conforme lo solicitado por ESSO, el tribunal de instancia emitió resolución concediendo la prórroga. El tribunal de instancia también dispuso con relación a la oposición a la certificación presentada por SHELL que no resolvería la solicitud de certificación de pleito de clase hasta que no se resolvieran las mociones dispositivas.
No obstante lo anterior, el 4 de octubre de 2000, notificada el 10 de octubre de 2000, el tribunal de instancia emitió resolución en la cual declaró sin lugar las mociones en oposición a la certificación y certificó el pleito como uno de clase, pero sólo para fines de responsabilidad del Secretario del DACO de adoptar el reglamento y para fines de la responsabilidad indemnizatoria del Estado Libre Asociado y los distribuidores-mayoristas por los daños sufridos por Trilla Piñero en cuanto a la segunda, tercera, cuarta y quinta causa de acción. Para esa fecha, aún no había transcurrido el término para recurrir, de la resolución que declaró sin lugar las mociones de desestimación.
C
Oportunamente, los distribuidores-mayoristas comparecieron ante este tribunal mediante peticiones de certiorari. También solicitaron la suspensión de los procedimientos ante el tribunal de instancia con el propósito de paralizar todo descubrimiento de prueba hasta tanto este tribunal resuelva el recurso de certiorari presentado. Trilla Piñero presentó oposición a la solicitud de suspensión de los procedimientos en instancia y *840 alegó que la paralización de todos los procedimientos afectaría el desenvolvimiento del proceso en cuanto a las primeras dos causas de acción dirigidas contra el Secretario del DACO y el Estado Libre Asociado.
El 21 de noviembre de 2000, decretamos la paralización de los procedimientos ante el tribunal de instancia y concedimos 30 días a la parte recurrida para que se expresara en relación con las controversias señaladas.
KLCE-00-01219
El 25 de octubre de 2000, compareció Gasolinas de Puerto Rico, Inc. y alegó que el tribunal de instancia erró al no desestimar por prematura la demanda presentada y al descartar la letra y espíritu de la Ley Núm. 157 la cual expresamente dispone que la trasferencia del ajuste por temperatura no comenzará hasta que DACO cree un reglamento que garantice que los consumidores reciben el mismo, lo cual aún no ha ocurrido.
KLCE-00-01243
El 26 de octubre de 2000, compareció TEXACO y alegó que el tribunal de instancia erró: (1) al no desestimar la demanda, ya que la misma no cumplía con los requisitos de madurez y de caso y controversia, y (2) al aplicar la Regla 14.2 de las de Procedimiento Civil, toda vez que la acción dirigida en contra de los distribuidores-mayoristas no es una contingente, según define la regla, y la única causa de acción válida en la demanda es contra el DACO.
KLCE-00-01247
SHELL compareció el 27 de octubre de 2000 y alegó que el tribunal de instancia erró al no desestimar la demanda en vista de que DACO no ha aprobado el reglamento que provee para la transferencia del ajuste por temperatura.
SHELL solicitó, además, la revocación de la resolución emitida el 4 de octubre de 2000, archivada en autos copia de su notificación el 10 de octubre de 2000, mediante la cual el tribunal de instancia certificó el pleito como uno de clase. SHELL alegó que erró el tribunal de instancia al certificar el pleito como uno de clase debido a que la parte demandante no cumplió con los requisitos de numerosidad, comunidad, tipicidad y adecuada representación, y debido a que el tribunal había resuelto posponer su resolución y el descubrimiento de prueba en jomo a esa controversia. 
KLCE-00-01249
El 27 de octubre de 2000, compareció ESSO y alegó que el tribunal de instancia erró: (1) al reconocer la existencia de una causa de acción privada por la violación al artículo sobre transferencia del ajuste por temperatura bajo la Ley Núm. 157, (2) al permitir a Trilla Piñero mantener una reclamación en su contra a pesar de que la condición suspensiva de la cual dependía la transferencia del ajuste por temperatura, nunca se materializó.
KLCE-00-01254
El 27 de octubre de 2000, compareció Toral Petroleum Corporation y alegó que el tribunal de instancia erró al no desestimar por prematura la demanda presentada y al descartar la letra y el espíritu de la Ley Núm. 157, la cual expresamente dispone que la transferencia del ajuste por temperatura no comenzará hasta que DACO cree un reglamento que garantice que los consumidores reciban el mismo, lo cual no ha ocurrido.
*841 KLCE-00-01310
El 9 de noviembre de 2000, ESSO compareció mediante otra petición de certiorari y nos solicitó la revocación de la resolución emitida el 4 de octubre de 2000, archivada en autos copia de su notificación el 10 de octubre de 2000, por el Tribunal de Primera Instancia, mediante la cual el tribunal declaró sin lugar las mociones en oposición a la certificación y certificó el pleito como uno de clase. ESSO alegó que el Tribunal de Primera Instancia erró al certificar la reclamación presentada como un pleito de clase, sin permitir que se realizara descubrimiento de prueba en relación-con dicha controversia, conforme autorizado mediante su orden del 14 de agosto de 2000, ni celebrar una vista para establecer los requisitos para la certificación de una clase.
11
En primer lugar, conviene que aclaremos cuál es la autoridad de los tribunales para determinar si una controversia es merecedora de adjudicación judicial. Esta autoridad nace del principio de justiciabilidad que requiere la existencia de un caso o controversia real para el ejercicio válido del poder judicial. La cuestión básica a determinar es al efecto de si los hechos alegados demuestran que existe una controversia sustancial entre partes que tengan intereses legales adversos, de suficiente inmediación, madurez y realidad para que hagan aconsejable el remedio solicitado. Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715, 720 (1980); E.L. A. v. Aguayo, 80 D.P.R. 552, 584 (1958). Los distribuidores-mayoristas alegan que la acción presentada ante el Tribunal de Primera Instancia no está madura, por lo que no es posible que un tribunal se pronuncie en tomo a la misma. Para el análisis sobre los méritos de este planteamiento, es preciso añadir a esta discusión lo que dispone la jurisprudencia sobre el tema de la interpretación de los estatutos y la exigibilidad de las obligaciones.
A
El propósito de toda interpretación estatutaria es determinar el significado del estatuto de que se trate. Cuando ese significado lo expresa la Legislatura en términos claros e inequívocos, no hay margen para interpretaciones. Martínez v. Junta Insular de Elecciones, 43 D.P.R. 413, 424 (1932). El Artículo 14 del Código Civil de Puerto Rico provee que "cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu". 31 L.P.R.A. sec. 14; Rojas v. Méndez & Co., Inc., 115 D.P.R. 50, 53 (1984); Lasalle v. J.A.C.L., 115 D.P.R. 805, 809 (1984); Municipio de Mayagüez v. Rivera, 113 D.P.R. 467, 470 (1982); Rodríguez v. Fidelity Bond Mortg. Corp., 108 D.P.R. 156, 158 (1978); Román v. Superintendente de la Policía, 93 D.P.R. 685, 688 (1966); Meléndez v. Tribunal Superior, 90 D.P.R. 656, 660 (1964). Así, cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de la intención legislativa en su totalidad. Cuevas Santiago v. Ethicon Division of Johnson & Johnson, 99 J.T.S. 111, a la pág. 1317; Rodríguez Rosa v. Méndez & Co., 99 J.T.S. 28, a la pág. 695; Alejandro v. E.L.A., 140 D.P.R. 538, 544-545 (1996); PPD v. Ferré, Gobernador, 98 D.P.R. 338, 351, 380 (1979); López v. Muñoz, Gobernador, 81 D.P.R. 337, 346 (1959). En este sentido, no hay necesidad de recurrir a una ayuda fuera del estatuto para descifrar la intención del legislador; el lenguaje empleado es decisivo. Tampoco puede interpretarse la intención legislativa a la luz de las manifestaciones contenidas en otra ley posteriormente aprobada y mucho menos por la propuesta contenida en un proyecto de ley que no ha recibido la aprobación de ambas cámaras. Jiménez y Salellas Inc. v. Maryland Cas. Co., 92 D.P.R. 207, 211-212 (1965); Buscaglia, Tes. v. Corte, 64 D.P.R. 11, 28 (1944). No obstante, conocer el propósito del legislador al aprobar la ley ayuda a entender el lenguaje utilizado. Srio. del Trabajo v. P.R. Cereal Extracts Inc., 83 D.P.R. 267, 276 (1961). Este sólo puede ignorarse cuando es claramente contrario a la verdadera intención legislativa, según ésta pueda surgir de la totalidad del estatuto o de la totalidad de la sección envuelta. Clínica Juliá v. Srio. de Hacienda, 76 D.P.R. 509, 520-522 (1954); Roig Comm. Bank v. Buscaglia, Tes., 74 D.P.R. 986, 997-998 (1953). Corresponde a los tribunales imprimirle efectividad a la intención legislativa, propiciando así la realización del propósito que persigue la ley. Irizarry v. Johnson & Johnson Consumer Products Co., (P.R.), Inc., 2000 J.T.S. 27, a la pág. 614.
Por otra parte, el Artículo 1042 del Código Civil provee que "las obligaciones nacen de la ley, de los contratos y de los actos y omisiones ilícitos o en que intervenga algún género de culpa o negligencia". 31 L.P. *842 R.A. sec. 2992. En ausencia de una ley, contrato, cuasicontrato, o de una actuación torticera, nadie podrá reclamar el cumplimiento de determinada obligación. Cervecería Corona, Inc. v. Tribunal Superior, 90 D.P.R. 698, 703 (1971). El Código Civil dispone que las obligaciones derivadas de una ley no se presumen. Sólo serán exigibles las expresamente determinadas en él o en leyes especiales. En cuanto a las segundas, la ley dispone que se regirán por los preceptos estatutarios que las hubiere establecido o creado, y en lo que dicha ley no hubiese previsto, se regirán por el propio Código de manera supletoria. Id. No obstante, la mera existencia de una obligación constituida conforme a derecho, no implica que sea exigible de manera inmediata. El Código provee que será exigible toda obligación cuyo cumplimiento no dependa de un suceso futuro o incierto, o de un suceso pasado que los interesados ignoren. 31 L.P.R.A. see. 3041. Por lo que cuando se trata de obligaciones sujetas a condición suspensiva, la adquisición de derechos, así como la resolución o pérdida de los mismos, dependerá del acontecimiento que constituya la obligación. 31 L.P.R.A. see. 3042.
B
Por su parte, en nuestro ordenamiento jurídico, la Regla 20 de Procedimiento Civil, 32 L.P.R.A. Ap. III, regula los requisitos que hacen posible la tramitación de una acción como un pleito de clase y las situaciones clásicas que dan lugar a este tipo de litigio.
La Regla 20.1 requiere que se cumpla con los siguientes requisitos para que uno o más miembros de una clase puedan demandar en representación de toda la clase:
"Uno o más miembros de una clase podrán demandar o ser demandados como representantes de todos los miembros de la clase, solamente si: (1) la clase fuere tan numerosa que la acumulación de todos los miembros resultare impracticable; (2) existieren cuestiones de hecho o de derecho común a la clase; (3) las reclamaciones o defensas de los representantes fueren típicas de las reclamaciones o defensas de la clase; y (4) los representantes protegerían los intereses de la clase de manera justa y adecuada."
Una vez establecido que los miembros de la clase cumplen a cabalidad con los requisitos exigidos por la Regla 20.1, para que el pleito pueda continuar como uno de clase, deberá evaluarse si en el mismo está presente, además, una de las situaciones señaladas en la Regla 20.2. El Tribunal de Primera Instancia certificó el pleito como uno de clase fundamentado en la Regla 20.2 (c) que expresa:

"(c) el tribunal determina que las cuestiones de hechos o de derecho comunes a los miembros de la clase predominen sobre cualesquiera cuestiones que afecten solamente a miembros individuales y que el pleito de clase sea superior a otros métodos disponibles para la justa y eficiente adjudicación de la controversia. Los asuntos pertinentes para las determinaciones incluyen: (1) el interés de los miembros de la clase en controlar individualmente la tramitación o defensa de pleitos separados; (2) la naturaleza y alcance de cualquier litigio relativo a la controversia ya comenzado por o en contra de miembros de la clase; (3) la deseabilidad de concentrar o no el trámite de las reclamaciones en el foro específico; (4) las dificultades que probablemente surgirían en la tramitación de un pleito de clase."

Los requisitos esbozados en la Regla 20.1 fueron denominados por el Tribunal Supremo en Cuadrado Carrión v. Romero Barceló, 120 D.P.R. 434, 449 (1988), como los requisitos de numerosidad, comunidad, tipicidad y adecuada representación. Para satisfacer el requisito de "numerosidad" como elemento en el pleito de clase, basta con demostrar que la acumulación crearía ciertos inconvenientes y obstáculos en la tramitación de un caso. También, otros factores, tales como la dispersión geográfica, la posibilidad de que los miembros de la clase puedan ser identificados para propósitos de la acumulación, la naturaleza del pleito, la cuantía de la reclamación y la habilidad de cada miembro para hacer valer sus derechos de forma individual, resultan de gran ayuda para este análisis. El requisito de "comunidad," requiere tan sólo una cuestión común de hechos o de derecho, por lo que no es necesario que se de una completa identidad en tales asuntos. La "tipicidad" requiere que las reclamaciones o defensas de los representantes sean típicas de las reclamaciones o defensas de la clase. Para que este requisito sea satisfecho tiene que existir una relación entre las reclamaciones *843 de los demandantes y las de la clase que se intenta representar. El requisito de "adecuada representación" es uno de génesis constitucional, pues quien pretende representar una clase, tiene que asegurarse que el trámite judicial cumpla con el debido proceso de ley. Cuadrado Carrión v. Romero Barceló, supra, a las págs. 449 a la 455.
En síntesis, la acción de clase es un procedimiento que permite la representación de un nutrido grupo de personas con reclamaciones típicas basadas en los mismos hechos o cuestiones de derecho, de manera que la adjudicación tenga la extensión y la profundidad necesaria para resolver las controversias planteadas. Cuadrado Carrión v. Romero Barceló, 120 D.P.R. 434, 445-446 (1988). Sin embargo, para que un caso pueda tramitarse como un pleito de clase, la parte promovente tiene el peso de presentar prueba que sustente dicha solicitud. Cuadrado Carrión v. Romero Barceló, supra, a la pág. 450. Como recurso de excepción, se exige un escrutinio riguroso por el tribunal, toda vez que habrá de adjudicarse, en el mismo, los derechos de personas que no participarán en la litigación. Ahora bien, la negación de una solicitud de certificación de pleito de clase, en determinada etapa de los procedimientos, no precluye que en una etapa posterior se satisfagan los requisitos pertinentes y sea legítima la certificación de la clase. Cuadrado Carrión v. Romero Barceló, supra, a la pág. 460.
III
A
Los distribuidores-mayoristas coinciden en apuntar que el tribunal de instancia erró al no desestimar la demanda, toda vez que el DACO aún no ha aprobado el reglamento que provee para la transferencia del ajuste por temperatura.
Consideremos el alcance del Artículo 5A de la Ley Núm. 157. Su texto es claro y su contenido no da margen a dudas con respecto a la intención legislativa. Esta ley proveyó para que se transfiera el ajuste por temperatura sobre gasolina recibido por los distribuidores y detallistas al consumidor. La transferencia del ajuste por temperatura está concebida para proteger a los consumidores del país. La sección 5A de la Ley Núm. 157 versa sobre dos aspectos claramente distinguibles. El primero de ellos está recogido en las primaras dos oraciones del inciso cuando establece que ”[t]odo distribuidor-mayorista vendrá obligado a pasar, transferir y reconocer al detallista, cualquier ajuste por temperatura recibido en su origen por dicho distribuidor-mayorista por la cantidad de gasolina y/o combustibles especiales comprados. Este ajuste por temperatura será a su vez reconocido y transferido por el detallista al consumidor mediante una rebaja en los precios de la venta al detal". El segundo, en sus dos oraciones restantes: "El Departamento de Asuntos al Consumidor establecerá mediante reglamento en un plazo de ciento veinte (120) días al momento de la aprobación de esta ley, un sistema que garantice que el consumidor reciba dicha transferencia. Disponiéndose que no se comenzará con la transferrencia del ajuste por temperatura hasta que no se haya establecido este mecanismo". De entrada, la disposición impone al distribuidor y al detallista la obligación de transferir el ajuste por temperatura al consumidor. Sin embargo, más adelante, dicha disposición legal establece a partir de qué momento es que los obligados a conceder la transferencia del ajuste ciertamente tienen que honrar dicha directriz; esto es, una vez DACO haya aprobado el reglamento, cosa que aún no se ha hecho, a pesar del plazo mandatorio que dispone la ley.
El inciso 5A de la Ley Núm. 157 claramente dispone que no se comenzará con la transferencia del ajuste por temperatura hasta que DACO apruebe un reglamento que garantice que el consumidor reciba dicha transferencia. En ausencia de la reglamentación correspondiente para lograr dicho propósito, la obligación impuesta a los distribuidores-mayoristas no es exigible. Esa obligación sería exigible a los distribuidores-mayoristas cuando DACO apruebe el reglamento que implante el mecanismo para conceder el ajuste por temperatura. Mientras no se apruebe dicho reglamento, no puede exigirse la obligación impuesta a los distribuidores-mayoristas.
*844 La reclamación interpuesta por Trilla Piñero trata realmente de una anticipación de lo que podría suceder una vez DACO aprueba el reglamento y los distribuidores-mayoristas se negaren a reconocer y conceder al consumidor el ajuste por temperatura. Sin el reglamento de DACO, no puede haber violación de ley alguna de parte de los distribuidores-mayoristas. Al no establecerse un reglamento, el mecanismo que requiere la ley para transferir el ajuste por temperatura al consumidor, tampoco queda establecido. A tenor con lo anterior, los efectos del inciso 5A de Ley Núm. 157, respecto a los distribuidores-mayoristas, no han de madurar en una controversia justiciable hasta que el DACO apruebe el reglamento. Bajo estos hechos, no existía, ni existe aún, una controversia real entre las partes de naturaleza justiciable, propia para un pronunciamiento judicial.
A la luz de este resultado, resulta improcedente pronunciamos, según se nos pide en relación a la existencia de una reclamación bajo la Regla 14.2 de Procedimiento Civil, sobre la acumulación de reclamaciones contingentes. Aquí no se trata de una reclamación contingente, según esta acción es definida por la regla, ya que la reclamación que pueda dirigirse contra los distribuidores-mayoristas no depende de que DACO apruebe el reglamento, sino del hecho de que éstos incumplan el mismo, una vez éste haya sido implantado. Como expresáramos anteriormente, para que pueda entablarse una reclamación en contra de los distribuidores-mayoristas, éstos tienen que haber incumplido con las normas impuestas mediante el reglamento. Ante la falta de incumplimiento de éstos, no hay reclamación contingente que anticipar, pues no es suficiente que DACO haya aprobado el reglamento, sino que los distribuidores-mayoristas hayan incumplido con el mismo para que pueda entablarse una reclamación en su contra.
Los distribuidores-mayoristas también plantearon que el tribunal de instancia erró al determinar que del Artículo 5A se deriva una causa de acción privada para que los consumidores reclamen sus derechos ante los tribunales, toda vez que ello no surge del lenguaje utilizado en la disposición legal. La exclusión de la acción privada por la Ley Núm. 157 que crea la obligación de transferir el ajuste por temperatura a los consumidores, tiene que surgir de dicha ley especial.
El Artículo 5 de la Ley 157, 23 L.P.R.A. see. 1108, establece que cualquier violación a los artículos 1, 2, 3, 4 y 5 constituirá una práctica o acto injusto o engañoso y estará sujeto a las disposiciones del Artículo 3 de la Ley Núm. 77 del 25 de junio de 1974, según enmendada, 10 L.P.R.A. see. 257 y siguientes. El Artículo 3 de la Ley Núm. 77 corresponde a la sección 259(c) del título 10 que dispone que la Oficina de Asuntos Monopolísticos podrá radicar y tramitar querellas administrativas en el DACO para prevenir, evitar y detener las violaciones a los métodos de competencia justa. Por lo tanto, la no transferencia del ajuste por temperatura constituye una violación a la competencia justa. La sección 259(c) no excluye las acciones privadas; no obstante, la sección 268 del mismo título establece, como excepción, que las reclamaciones por los actos declarados ilegales en la sección 259, entre los que, por referencia, se encuentra la violación a la transferencia del ajuste por temperatura, no podrán tramitarse en primera instancia por la vía judicial. Lo anterior es indicativo de que para que efectivamente pueda tramitarse una acción por una persona perjudicada, la causa tiene que surgir luego de que el reglamento haya entrado en vigor y se presentada en primera instancia ante el DACO. Luego de agotado el trámite administrativo, es que las partes tienen disponibles el mecanismo de revisión judicial. Es la agencia administrativa especializada a quien corresponde adjudicar, en primera instancia, cualquier reclamación que surja como consecuencia de su reglamentación.
Conforme los argumentos anteriores, erró el Tribunal de Primera Instancia al declarar sin lugar las mociones de desestimación presentadas por los distribuidores-mayoristas.
B
Pasemos a discutir el planteamiento en relación con la resolución del Tribunal de Primera Instancia mediante la cual certificó la acción como un pleito de clase. Un examen de los autos del caso refleja el siguiente estado al momento del Tribunal de Primera Instancia emitir la resolución certificando el pleito como uno de clase. El 14 de agosto de 2000, notificada el 21 de agosto de 2000, el tribunal de instancia emitió resolución indicando que no resolvería la solicitud de certificación de pleito de clase hasta que no se resolvieran las mociones presentadas por los distribuidores-mayoristas. (Véanse página 650 a la 652 del Apéndice de la petición de SHELL). El 18 de *845 septiembre de 2000, notificada el 27 de septiembre de 2000, el tribunal de instancia declaró no ha lugar dichas mociones de desestimación. El 4 de octubre de 2000, notificada el 24 de octubre de 2000, el tribunal de instancia certificó la acción como un pleito de clase. Los distribuidores-mayoristas solicitaron reconsideración de la primera resolución, las cuales fueron declaradas no ha lugar por el tribunal de instancia mediante orden emitida el 23 de octubre de 2000, notificada el 24 de octubre de 2000. Inconformes con dicha determinación, los distribuidores-mayoristas presentaron sus peticiones de certiorari. También solicitaron la paralización de los procedimientos ante el Tribunal de Primera Instancia con el propósito de paralizar todo descubrimiento hasta tanto este Tribunal resuelva los recursos de certiorari presentados. El 21 de noviembre de 2000, este Tribunal decretó la paralización de los procedimientos ante el tribunal de instancia.
Resolvemos que Trilla Piñero no demostró que los límites de la clase estén definidos mediante alegaciones específicas y debidamente fundamentadas. Las alegaciones de la demanda presentada por Trilla Piñero hacen una reproducción enumerada de cada uno de los requisitos que la Regla 20 establece que deben ser satisfechos para que un caso pueda certificarse como un pleito de clase. Dichas alegaciones constituyen unas aseveraciones generales, amplias y ambiguas por las cuales Trilla Piñero entiende e incluso autodenomina la acción presentada como un pleito de clase. Véase páginas de la 1 a la 15 del Apéndice de la petición de SHELL. Estas alegaciones no cumplen con los requisitos que impone la Regla 20 de Procedimiento Civil y la jurisprudencia interpretativa, puesto que no define la clase que se intenta certificar. En un pleito de clase, la identificación de la clase es indispensable. Esto debido a que la determinación de los derechos de una clase por un tribunal constituye cosa juzgada para todos los miembros de la misma. Una decisión adversa contra una clase va a tener la consecuencia de privar a las personas representadas por la clase de su día en corte, cosa que podría ser una violación al debido proceso de ley, por lo que éstas no deben ser acumuladas. Además, el propósito de la Regla 20 es que la parte promovente de la misma está en la obligación de demostrar al tribunal la procedencia y conveniencia de la certificación para que éste, a su vez, ejerza su escrutinio y determine, a base de las circunstancias del caso, si éste amerita ser tramitado como un pleito de clase. En el caso ante nuestra consideración, el trámite en cuanto a este aspecto apenas comenzaba, pues el tribunal solamente contaba con las alegaciones de las partes del pleito y con poca o ninguna evidencia tendente a establecer la procedencia y conveniencia de la certificación. Por lo que erró al Tribunal de Primera Instancia al certificar el pleito como uno de clase.
IV
Por todo lo anterior, expedimos el certiorari solicitado, revocamos la Orden y la Resolución recurrida, se desestima la acción en contra de todos los distribuidores-mayoristas y se deja sin efecto la Resolución del Tribunal de Primera Instancia certificando el pleito como uno de clase.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 36
1. El ajuste por temperatura se calcula a base de una temperatura de 60 grados. Las refinerías y los suplidores otorgan a los mayoristas-distribuidores un ajuste en el precio en la medida en que la temperatura ambiente al momento de la compra del combustible sea mayor o menor de 60 grados. El ajuste existe debido a pequeños cambios en el volumen que el combustible experimenta al exponese a distintas temperaturas.
2. Conjuntamente con estas mociones de desestimación, los distribuidores-mayoristas solicitaron órdenes protectoras para no contestar los interrogantes que habían sido servidos por Trilla Piñero hasta tanto se resolviera las mociones de desestimación presentadas.
3. Gasolinas de Puerto Rico presentó su moción de desestimación el 16 de mayo de 2000, Toral Petroleum Corp. el 23 de mayo de 2000 y Cia. Petrolera del Caribe el 12 de junio de 2000. .
*846 4. El artículo 1074 dispone que: "el acreedor puede, antes del cumplimiento de las condiciones, ejercitar las acciones procedentes para la preservación de su derecho". 31 L.P.R.A. sección 3049.
5. Best Gasoline Corp. no presentó un recurso independiente, sino que el 8 de noviembre de 2000 presentó en el KLCE-00-01247, una moción adoptando por referencia los argumentos contenidos en la solicitud de certiorari presentada por Shell. Mediante dicha moción, Best Gasoline Corp. compareció por vez primera ante este Tribunal, fuera del término establecido en la Regla 32 del Tribunal de Circuito de Apelaciones para presentar el recurso de certiorari. Por tanto, la moción de Best Gasoline Corp. es improcedente, aunque lo resuelto por este Tribunal en esta Sentencia le puede beneficiar.
6. La madurez enfoca en la proximidad temporal del daño sobre el litigante. Com. de la Mujer v. Srio. de Justicia, supra, a la pág. 22.
7. La Regla 14.2 dispone que: "cuando se tratare de una reclamación que dependa para su ejercicio de que otra reclamación sea proseguida hasta su determinación, dichas dos reclamaciones podrán acumularse en el mismo pleito. El tribunal no resolverá la reclamación contingente hasta tanto se resuelva la reclamación principal.” 31 L.P.R.A. Ap. III, R. 14.2.
8. El Artículo 5 de la Ley 157 enmendó el Artículo 8 de la Ley Núm. 3 de 21 de marzo de 1978, 23 L.P.R.A. sec. 1108.