

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Construcciones José Carro, S.E. <br><br> Recurrido <br><br> v. <br><br> Municipio Autónomo de Dorado et al. <br><br> Peticionario | Certiorari <br><br> 2012 TSPR 114 <br><br> 186 DPR ____ |

Número del Caso: CC-2010-1006

Fecha: 9 de julio de 2012

Tribunal de Apelaciones:

> Región Judicial de Bayamón y Aibonito, Panel V

Abogado de la Parte Peticionaria:

> Lcdo. Raúl L. Grajales García

Abogados de la Parte Recurrida:

> Lcdo. Fernando Barnés Rosich
> Lcda. Sonia S. Sierra Sepúlveda

Materia: Ley de Municipios Autónomos – Art. 2007 (g) de la Ley Núm. 81 – 1991 pago de arbitrios de construcción; efecto de declarar ineficaz ordenanza municipal que contiene cláusula penal por incumplimiento

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Construcciones José Carro, S.E.

     Recurrido

          v.

Municipio Autónomo de Dorado *et al.*

     Peticionario

Certiorari

CC-2010-1006

Opinión del Tribunal emitida por el Juez Asociado Señor Rivera García

En San Juan, Puerto Rico, a 9 de julio de 2012.

Comparece el Municipio Autónomo de Dorado, en adelante Municipio o peticionario, y nos solicita que revoquemos una Sentencia del Tribunal de Apelaciones que modificó una Resolución emitida por el Tribunal de Primera Instancia. Mediante el referido dictamen, el foro primario declaró no ha lugar las solicitudes de sentencia sumaria presentadas tanto por el peticionario como por Construcciones José Carro, S.E. El foro apelativo intermedio concluyó que procedía la adjudicación de la controversia sumariamente a base de los hechos incontrovertidos. En vista de ello, devolvió el caso al Tribunal de Primera Instancia para que determinara qué efecto tiene el que la

ordenanza municipal que impone el arbitrio de construcción en controversia, solo se haya publicado en un periódico de circulación general.

Este recurso nos brinda la oportunidad de interpretar por primera vez el inciso (g) del Art. 2.007 de la Ley de Municipios Autónomos, Ley Núm. 81-1991 (21 L.P.R.A. sec. 4057), en adelante Ley de Municipios Autónomos o Ley Núm. 81, referente al pago de arbitrios de construcción. Específicamente, el efecto que conlleva declarar ineficaz una ordenanza municipal que a su vez contiene una cláusula de sanción penal por incumplimiento. Por considerar que la declaración de ineficacia que realice un tribunal solo tiene el efecto de anular la sanción penal contenida en la ordenanza, y no la totalidad de esta, revocamos la determinación del foro *a quo*. Veamos los antecedentes fácticos que dieron génesis a la controversia que nos ocupa.

I

La Autoridad para el Financiamiento de la Infraestructura (AFI) adjudicó una subasta a favor de Construcciones José Carro, S.E. a un costo de $29,020,000. El proyecto de construcción tiene como objetivo el control de inundaciones y la canalización del Río La Plata dentro de la demarcación territorial del Municipio de Dorado.

Previo a comenzar los trabajos de construcción, el Municipio le requirió al recurrido el pago de $1,451,000 por arbitrios de construcción. Ello, conforme lo

establecido en la Ordenanza Municipal Núm. 59, serie 1997-1998 (Ordenanza 59)[1], según enmendada por la Ordenanza Municipal Núm. 18, serie 2000-2001 (Ordenanza 18). Esta última aumentó el por ciento del arbitrio de construcción establecido originalmente en la Ordenanza 59. El recurrido, bajo protesta, pagó la referida suma y solicitó reconsideración al Municipio, la cual fue denegada.

Posteriormente, el recurrido presentó una demanda ante el Tribunal de Primera Instancia. En esta, afirmó que realizó el pago bajo protesta y además solicitó que se declarara la ineficacia de la ordenanza. En apoyo a su posición, alegó que las Ordenanzas 59 y 18 no fueron publicadas conforme a la Ley de Municipios Autónomos, *supra*, y por ende, que estas nunca entraron en vigor. Fundamenta su alegación en el hecho de que la Ordenanza 59 tan solo fue publicada en un periódico de circulación general, obviando así el requisito de publicación en uno de circulación regional. Por ello, adujo que no podían

---

[1] La referida ordenanza contiene una sanción penal que lee como sigue en su Sección 21ra., en la pág. 11:

[…]

B. Sanción Penal: Toda persona que voluntariamente, deliberada y maliciosamente ofreciera información falsa a sabiendas de su falsedad, respecto al valor de la obra que genera una actividad de construcción tributable, en cualquiera de las declaraciones deben presentarse ante el Director de Finanzas en conformidad con esta Ordenanza o que deliberada, voluntaria y maliciosamente dejare de rendir la declaración y comenzare la actividad, en adición e independientemente de cualquier disposición administrativa o penal aplicable, convicto que fuere, será castigado con una multa no mayor de $500.00 con una pena de reclusión no mayor de seis (6) meses ambas penas a discreción del tribunal. En el caso de que en una revisión judicial se deje sin efecto una Ordenanza con sanción penal, se entenderá que sólo la sanción penal quedará sin efecto.

aplicársele las ordenanzas municipales mencionadas y, en consecuencia, correspondía que se le devolviera el dinero pagado por arbitrios.

Luego de varias incidencias procesales, el 22 de febrero de 2010 el Municipio solicitó que se dictara sentencia sumaria a su favor. Arguyó que la cantidad cobrada por arbitrios municipales resultó del cálculo dispuesto por la Ordenanza Núm. 18. Esta establece un 5% de impuesto sobre el precio total de la obra. Esbozó, además, que las leyes locales no requerían ser publicadas para que surtieran efecto y que, específicamente, la Ley de Municipios Autónomos, *supra*, no impone la obligación de publicar las ordenanzas referentes a arbitrios municipales.

En respuesta a lo anterior, Construcciones José Carro, S.E. se opuso a esta solicitud y, a su vez, solicitó sentencia sumaria a su favor. Alegó que la falta de notificación de las ordenanzas tuvo el efecto de impedir que estas cobraran vigencia dado que no fueron aprobadas conforme a derecho. Además, que la Ley de Municipios Autónomos, *supra*, establece que las ordenanzas que impongan sanciones penales se deberán publicar en un periódico de circulación general y en uno de circulación regional, requisito que no fue cumplido con respecto a la Ordenanza 59, la cual imponía una sanción penal.

Tiempo después, el 23 de junio de 2010 el foro primario emitió una Resolución por la cual denegó resolver

el caso mediante sentencia sumaria. Fundamentó su decisión en la existencia de hechos materiales que impiden adjudicar el pleito sumariamente y en que "resolver que la ordenanza no fue debidamente publicada conllevaría dejar sin efecto la intención del legislador".[2]

Inconforme con esta determinación, el recurrido acudió ante el Tribunal de Apelaciones mediante recurso de *certiorari*. Adujo que el foro primario erró al sostener la vigencia de las aludidas ordenanzas, aun cuando estas no fueron publicadas con arreglo a la ley y a derecho. Además, señaló que la consecuencia de este incumplimiento es la ineficacia total de la ordenanza.

Consecuentemente, mediante Sentencia de 23 de septiembre de 2010 el foro apelativo intermedio modificó el dictamen del Tribunal de Primera Instancia. Concluyó que el hecho de la falta de publicación de la Ordenanza 59 no estaba en controversia, por lo que existían hechos suficientes para emitir una sentencia sumaria.

No conteste con esta determinación el Municipio de Dorado presentó una moción de reconsideración en la cual alegó que, aunque no se hubiese publicado correctamente la referida ordenanza, esto solo conllevaba la nulidad de la sanción penal contenida en esta y no de la ordenanza en su totalidad. Fundamentó dicho argumento en la Ley Núm. 199-1996, promulgada para añadir el Art. 2.007 a la Ley de Municipios Autónomos, *supra*. Mediante Resolución de 13 de

---

[2] Apéndice de la petición de *certiorari*, pág. 271.

octubre de 2010 el Tribunal de Apelaciones rechazó revisar su dictamen.

Nuevamente inconforme, el Municipio comparece ante nos mediante recurso de *certiorari* señalando que el foro apelativo intermedio erró en lo siguiente:

> **Erró el [Tribunal de Apelaciones] en su sentencia al revocar la Resolución del [Tribunal de Primera Instancia] y expresar que la Ordenanza Núm. 59, *supra*, carece de validez debido a que no fue publicada conforme a derecho.**

En esencia, la posición del Municipio es que, de haberse cumplido el mandato de la Ley de Municipios Autónomos, *supra*, sobre cómo publicar una ordenanza que contiene una sanción penal, solo corresponde que se declare inválida dicha sanción y no el resto de la ordenanza. Por lo tanto, solicita que mantengamos en vigor, y se aplique al caso de autos, las disposiciones bajo las cuales se realizó el cobro de arbitrios en cuestión.

Atendido el recurso de *certiorari* presentado por el peticionario, el 8 de abril de 2011 expedimos el auto solicitado. Contando con la comparecencia de ambas partes, procedemos a resolver.

II

A

La Ley de Municipios Autónomos, Ley Núm. 81-1991, 21 L.P.R.A. sec. 4001 *et seq.*, se creó con el propósito de garantizar a los municipios un mayor grado de autonomía fiscal y gobierno propio para atender eficazmente las

necesidades y el bienestar de sus habitantes. Pfizer Pharm. V. Mun. de Vega Baja, 182 D.P.R. 267, 286 (2011). Conforme a esta política pública, esta ley regula las facultades de los municipios para lograr el mejor aprovechamiento y fiscalización de las obras que se realicen dentro de sus límites territoriales.

No obstante, aunque los municipios carecen de poder inherente para imponer tributos, la Asamblea Legislativa puede delegarles esa facultad mediante mandato claro y expreso. HBA Contractors v. Mun. de Ceiba, 166 D.P.R. 443, 453-454 (2005). A esos efectos, la Constitución de Puerto Rico establece que "[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido".[3]

Además, la creación de la Ley de Municipios Autónomos persigue descentralizar el gobierno y encarnar principios cardinales democráticos de participación ciudadana. Es por esto que se ha denominado el municipio como una "unidad básica para la administración comunitaria". Torres Santiago v. Mun. de Coamo, 170 D.P.R. 541, 548 (2007). La implementación de esta política pública descentralizadora resultó en un grado mayor de autonomía, mejores herramientas financieras y una ampliación del marco de

---

[3] Art. VI, Sec. 2, Const. P.R., L.P.R.A., Tomo 1.

acción del municipio en espacios que le estaban vedados o grandemente limitados en el pasado. Id.[4]

Cónsono con lo anterior, el Art. 2.002 de la Ley de Municipios Autónomos[5], dispone que los municipios puedan, entre otras facultades, imponer contribuciones o arbitrios sobre las obras de construcción que se realicen dentro de los límites territoriales del Municipio. Este Artículo preceptúa, en lo pertinente, lo siguiente:

> Además de las que se dispongan en otras leyes, el municipio podrá imponer y cobrar contribuciones o tributos por los conceptos y en la forma que a continuación se establece:
> (a) […]
> (d) Imponer y cobrar contribuciones, derechos, licencias, arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables dentro de los límites territoriales del municipio, compatibles con el Código de Rentas Internas y las leyes del Estado Libre Asociado de Puerto Rico, incluyendo sin que se entienda como una limitación, por el estacionamiento en vías públicas municipales, por la apertura de establecimientos comerciales, industriales y de servicios, **por la construcción de obras y el derribo de edificios**, por la ocupación, el uso y la intervención de vías públicas y servidumbres municipales y por el manejo de desperdicios.
> Toda obra de construcción dentro de los límites territoriales de un municipio, realizada por una persona natural o jurídica privada, o que sea llevada a cabo por una persona natural o jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o municipal o del gobierno federal, incluyendo aquella obra que no requiera la expedición de un permiso por la Administración de Reglamentos y Permisos o por un municipio autónomo, **deberá pagar arbitrio de construcción correspondiente,**

---

[4] Véase, además: Exposición de Motivos y Art. 1.002 de la Ley de Municipios Autónomos, 1991 (Parte 1) Leyes de Puerto Rico 459; <u>López v. Mun. de Mayagüez</u>, 158 D.P.R. 620 (2003); <u>Mun. San Juan v. Banco Gub. Fomento</u>, 140 D.P.R. 873, 885 (1996).

[5] 21 L.P.R.A. sec. 4052.

**previo al comienzo de dicha obra.** (Énfasis nuestro.)

El término *arbitrio de construcción* es definido por la propia Ley de Municipios Autónomos como "aquella contribución impuesta por los municipios a través de una ordenanza municipal aprobada con dos terceras (2/3) partes [de la legislatura municipal] para ese fin, la cual recae sobre el derecho de llevar a cabo una actividad de construcción o una obra de construcción dentro de los límites territoriales del municipio".[6] En ese sentido, no existe otra obligación impuesta al municipio para la implementación de un arbitrio de construcción que no sea la aprobación del mismo por dos terceras (2/3) partes de la legislatura municipal.

Además, el Art. 5.007 de la Ley Núm. 81[7], *supra* dispone el término que habrá de transcurrir para que cobre vigencia una ordenanza municipal al establecer que "[t]oda ordenanza y resolución regirá desde la fecha que se indique en su cláusula de vigencia, excepto en el caso de las ordenanzas que establezcan penalidades y multas administrativas las cuales empezarán a regir a los diez (10) días de su publicación en la forma dispuesta en este subtítulo".

---

[6] 21 L.P.R.A. sec. 4001 (cc).

[7] 21 L.P.R.A. sec. 4207(f).

Por otro lado, el Art. 2.003 de la Ley de Municipios Autónomos[8], *supra*, dispone que toda ordenanza que imponga una sanción penal "comenzará a regir diez (10) días después de su publicación en uno o más periódicos de circulación general y de circulación regional, siempre y cuando el municipio se encuentre dentro de la región servida por dicho periódico". En este sentido, la ley le impone al municipio la obligación de publicar la ordenanza en aquellos casos en que contenga disposiciones de carácter penal. Específicamente, deberá ser publicada en un periódico de circulación general y uno de circulación regional. Es decir, para que la sanción penal cobre vida deberá cumplir con los requisitos establecidos estatutariamente.

Conviene puntualizar, que en su concepción, el anterior precepto legal daba la opción al municipio de escoger cumplir con el requisito de publicación por medio de un periódico de circulación general o uno de publicación regional. Sin embargo, antes de aprobarse la ley, este cuerpo legal cambió la letra "o" por la letra "y".[9] En virtud de ello, no cabe duda que la intención legislativa fue concretar como requisito indispensable para la aprobación de una ordenanza municipal que contenga una sanción penal, el que se publique la misma tanto en un

---

[8] 21 L.P.R.A. sec. 4053.

[9] Informe de Conferencia del Sustitutivo del Senado al P. de la C. 1296 de 29 de agosto de 1991, 6ta Sesión Ordinaria, 11ma. Asamblea Legislativa, pág. 2.

periódico de circulación general como en uno de circulación regional.

El estado de derecho vigente para la imposición y cobro de arbitrios ha sufrido varios cambios y modificaciones a través de numerosas enmiendas a la Ley Núm. 81, *supra*. Entre estas, se encuentra la Ley Núm. 199-1996, la cual fue promulgada para añadir el Art. 2.007 a la Ley de Municipios Autónomos, *supra*. La referida ley, establece un procedimiento para la determinación del arbitrio de construcción, su imposición, cobro, exenciones, reclamaciones, rembolsos, sanciones administrativas y penales y la facultad para formalizar acuerdos por escrito.

El citado artículo, establece lo siguiente:

Pago del arbitrio de construcción- Reclamaciones y otros

(g) Incumplimiento.-

[…]

(2) Sanción penal.- Toda persona que voluntariamente, deliberada y maliciosamente ofreciera información falsa, a sabiendas de su falsedad, respecto al valor de la obra que genera una actividad de construcción tributable, en cualquiera de las declaraciones deben presentarse ante el Director de Finanzas en conformidad con este subcapítulo; o que deliberada, voluntaria y maliciosamente dejare de rendir la declaración y comenzare la actividad de construcción o dejare de pagar el arbitrio y comenzare la actividad, en adición e independientemente de cualquier disposición administrativa o penal aplicable, convicto que fuere, será castigado con una multa no mayor de quinientos $500.00 o con una pena de reclusión no mayor de seis (6) meses o ambas penas a discreción del tribunal. **En el caso de que en una revisión judicial se deje sin efecto una**

**ordenanza con sanción penal, se entenderá que sólo la sanción penal quedará sin efecto.** (Énfasis nuestro.)[10]

En armonía con lo anterior, es de señalar que la sanción penal impuesta por parte de los municipios equivale a una privación de la propiedad de una persona. Por lo tanto, requiere al implementarse que se cumpla con las garantías del debido proceso de ley. Este requisito de publicación tiene el efecto de informar a la ciudadanía de las ordenanzas aprobadas, así cumple con la máxima constitucional de que nadie será privado de su propiedad sin el debido proceso de ley.

Respecto al efecto que conlleva incumplir con los requisitos de publicación, la ley es clara. "En el caso de que en una revisión judicial se deje sin efecto una ordenanza con sanción penal, se entenderá que sólo la sanción penal quedará sin efecto".[11] En síntesis, su incumplimiento resulta en la nulidad de la sanción penal y no de la ordenanza en su totalidad.

Analizado el marco estatutario que provee para la imposición de arbitrios de construcción por parte de los municipios mediante ordenanzas municipales, pasemos a examinar los preceptos reconocidos en nuestro ordenamiento jurídico aplicables a la interpretación de las leyes y al principio de hermenéutica legal.

---

[10] Véase Art. 2.007(g)(2), Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4057 (g)(2).

[11] Id.

B

Como es harto sabido, aun la más clara de las leyes requiere interpretación.[12] Nuestro ordenamiento jurídico consigna determinadas normas de hermenéutica legal las cuales, en mayor o menor medida, se imponen como principios rectores del ejercicio de la función adjudicativa de los tribunales. Entre tales principios, se destaca aquel contenido en el Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, el cual dispone que: "[C]uando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu".

Con el fin de remediar las controversias y adjudicar los derechos que corresponden a las partes en un pleito, los tribunales tenemos la ineludible labor de interpretar los estatutos aplicables a la situación de hechos en particular que nos atañe. R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. 1, pág. 241. Este proceso de interpretación, que recibe el nombre de **hermenéutica legal**, conlleva auscultar, averiguar, precisar y determinar cuál fue la voluntad legislativa al aprobar la ley. Id.

Así pues, es de amplia aceptación el entendido de que sólo hay una regla de interpretación que es absolutamente invariable y ésta es que debe descubrirse y hacerse cumplir la verdadera intención y deseo del poder legislativo. Srio.

---

[12] Véase, E.L.A. v. Frig. y Alm. del Turabo, Inc., 155 D.P.R. 27 (2001); Nadal v. Depto. Rec. Nat., 150 D.P.R. 715 (2000).

del Trabajo v. P.R. Cereal Extracts Inc., 83 D.P.R. 267, 275-276 (1961).

Como corolario de la doctrina, los tribunales, al ejercer su función interpretativa de la ley, deberán considerar el propósito o intención de la Asamblea Legislativa al aprobar la misma. Ello, a fines de propiciar la obtención del resultado querido por el legislador originalmente. Piovanetti v. S.L.G. Touma, S.L.G. Tirado, 178 D.P.R. 745, 767 (2010); Piñero v. A.A.A., 146 D.P.R. 890, 898 (1998); García v. E.L.A., 146 D.P.R. 725, 733 (1998).

Hemos reiterado en ocasiones anteriores que los tribunales, como intérpretes finales de las leyes, nos encontramos en la obligación de lograr un resultado que se ajuste al propósito y a la política pública que inspiró a la Legislatura al aprobarlas. Ifco Recycling, Inc. v. Autoridad de Desperdicios Solidos, 2012 T.S.P.R. 35, res. el 27 de febrero de 2012, 184 D.P.R. ___ (2012); Consejo Titulares v. DACo, 181 D.P.R. 945, 958 (2011). Esta normativa tiene como objetivo lograr que, finalmente, la determinación que el tribunal realice asegure el resultado que el legislador quiso obtener al aprobar la ley. Id.

A tenor con todo lo anterior, señalan los tratadistas Bernier y Cuevas Segarra que:

> la intención legislativa de una ley no debe buscarse en una frase aislada o en una de sus secciones; sino en el contexto de todo el estatuto, tomando en cuenta el propósito seguido por el legislador. Por eso, un artículo de una ley no debe interpretarse aisladamente, sino

considerando la ley en su totalidad. Bernier y Cuevas Segarra, op. cit., a la pág. 245.

La voluntad de la Asamblea Legislativa al adoptar el estatuto queda reflejada a través del historial legislativo de la disposición legal. Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 539 (1999). Primeramente, debemos acudir a la exposición de motivos de la ley, la cual, como regla general, recoge el propósito que inspiró su creación. Id. Otra fuente que puede arrojar luz sobre la intención del legislador en la aprobación de la ley son las manifestaciones de los miembros del cuerpo durante el trámite legislativo. Bernier y Cuevas Segarra, op. cit., pág. 242. Esto incluye los datos recogidos en el informe emitido por la comisión legislativa que estudió el proyecto de ley y las expresiones de los legisladores en el hemiciclo durante la sesión de aprobación del estatuto, según recogidas en el Diario de Sesiones. Id.

Examinadas las normas aplicables a la interpretación de las leyes y al principio de hermenéutica legal, pasemos a delinear los contornos de la figura procesal de sentencia sumaria.

C

Las Reglas de Procedimiento Civil fueron concebidas para asegurar "…una solución rápida y económica de todo procedimiento". Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III R.1. A tales efectos, la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III R.36, preceptúa lo referente al mecanismo de la sentencia sumaria. El propósito principal

de la moción de sentencia sumaria es propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales. En vista del ánimo dinámico de estas, no ameritan la celebración de un juicio en su fondo, ya que lo único que resta es dirimir una controversia de derecho. Quest Diagnostics v. Mun. San Juan, 175 D.P.R. 994 (2009).

Sobre este particular, el profesor Javier Echevarría nos indica que "[l]a sentencia sumaria constituye un mecanismo procesal mediante el que se le confiere discreción al tribunal para dictar sentencia sobre la totalidad de una reclamación, o sobre cualquier controversia comprendida en ésta, sin la necesidad de celebrar una vista evidenciaria". J. A. Echevarría Vargas, Procedimiento Civil Puertorriqueño, 1era ed, Ediciones Situm, Inc., 2010, pág. 204. Usada correctamente, la sentencia sumaria es un valioso mecanismo procesal para descongestionar los calendarios judiciales. Carpets & Rugs v. Tropical Reps, 175 D.P.R. 615, 638 (2009).

Por su parte, la Regla 36.3, 32 L.P.R.A. Ap. III R. 36.3, dispone que para dictarse sentencia sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surja que no hay controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, debe dictarse sentencia sumaria a favor de la parte promovente.

Ramos Pérez v. Univisión, 178 D.P.R. 200 (2010); González

Aristud v. Hosp. Pavía, 168 D.P.R. 127 (2006); Luan Invest.

Corp. v. Rexach Const. Co., 152 D.P.R. 652 (2000).

Respecto a la adjudicación por la vía sumaria, hemos

señalado que cuando "…se present[a] un caso que involucra

una acción que requiera algún elemento subjetivo de

intención, propósito mental o negligencia, o cuando el

factor de credibilidad es esencial, no [se] impide su

concesión si no existe controversia en cuanto a los hechos

materiales". Abrams Rivera v. E.L.A., 178 D.P.R. 914, 933

(2010).

Según manifiesta el profesor Cuevas Segarra en su

tratado de Derecho Procesal Civil:

> Aunque un tribunal Apelativo debe utilizar los
> mismos criterios que el Tribunal sentenciador al
> determinar si procede dictar sentencia sumaria,
> está limitado de dos maneras: sólo puede
> considerar los documentos que se presentaron
> ante el foro de primera instancia. Las partes no
> pueden añadir en apelación exhibits,
> deposiciones o afidávits que no fueron
> presentadas oportunamente en el foro de primera
> instancia, ni pueden esbozar teorías nuevas o
> esgrimir asuntos nuevos por primera vez ante el
> foro apelativo. El Tribunal Apelativo sólo puede
> determinar si existe o no alguna controversia
> genuina de hechos materiales y si el derecho se
> aplicó de forma correcta.
>
> J. Cuevas Segarra, Tratado de Derecho Procesal
> Civil, 2da ed., Ed. Publicaciones JTS, 2011, T.
> III, pág. 1042.[13]

Solo procede dictar sentencia sumaria cuando surge

claramente que el promovido no puede prevalecer y que el

Tribunal cuenta con la verdad de todos los hechos

---

[13] Véase, además, Vera v. Dr. Bravo, 161 D.P.R. 308 (2004).

necesarios para poder resolver la controversia. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986). Cuando no existe una clara certeza sobre todos los hechos materiales en la controversia, no procede una sentencia sumaria. Id.

En ocasiones anteriores, hemos dispuesto que un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Ramos Pérez v. Univisión, supra, citando a J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2000. T. I, pág. 609. La Regla 36.1 de Procedimiento Civil de 2009 se refiere a estos hechos como "esenciales y pertinentes…". 32 L.P.R.A. Ap. V.

De igual forma, hemos expresado que "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". Ramos Pérez v. Univisión, supra, pág. 214. Toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a la misma. Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538 (1991); Corp. Presiding. Bishop CJC of LDS v. Purcell, supra.

Al evaluar una moción de sentencia sumaria, los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos, sean o no parte de la solicitud de

sentencia sumaria, de los cuales surjan admisiones hechas por las partes. Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).

Además, la sentencia sumaria "vela adecuadamente por el balance entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles". Ramos Pérez v. Univisión, supra, pág. 220. Ahora bien, "el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley". MGMT. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599, 611 (2000).

Acorde con lo anteriormente expuesto, debe quedar claro que si los hechos no están en controversia y el pleito solo presenta una cuestión de derecho, procede disponer del asunto mediante sentencia sumaria. En lo pertinente, en Piñero v. AAA, supra, estimamos procedente el resolver por la vía sumaria una controversia de derecho que versaba sobre la interpretación de un estatuto y la validez de una resolución emitida por la Junta de Gobierno de la A.A.A.

Habiendo examinado el Derecho aplicable a los hechos del caso ante nos, pasemos a resolver las controversias inicialmente enunciadas.

### III

En el presente caso, la parte recurrida alega que el cómputo de los arbitrios de construcción no fue calculado

correctamente. Arguye que el tipo contributivo que le aplica es uno escalonado de 5%, 4% y 3%. Por su parte, el municipio indicó que impuso un arbitrio fijo de 5%, conforme a lo establecido en la Ordenanza Núm. 18. Además, señaló que el por ciento escalonado pertenece a la Ordenanza Núm. 59, y que esta cifra fue expresamente enmendada por al Ordenanza Núm. 18.

Específicamente, la Ordenanza Núm. 59 se creó para imponer y cobrar arbitrios por concepto de construcciones. En la misma, se estableció un pago de 5% del costo total de la obra de un millón de dólares, los próximos 5 millones al 4% y todo exceso de 6 millones al 3%.

A su vez, la Ordenanza Núm. 18 fue implantada para revisar el tipo contributivo de arbitrios aplicables a ciertos proyectos de construcción y para enmendar la Ordenanza Núm. 59. En lo pertinente, esta ordenanza enmendó el por ciento que se pagaría en las obras de construcción a uno fijo de 5%.

Como mencionamos anteriormente, la Ley de Municipios Autónomos, *supra*, le concede a los municipios la facultad de imponer arbitrios a toda obra de construcción que se realice dentro de sus límites territoriales. Esta facultad del municipio existe independientemente de cualquier otra contribución o tarifa dispuesta en otras leyes.

Del expediente se desprende que Construcciones José Carro, S.E., alega que fue inducido a error por empleados del Municipio de Dorado. Que se le entregó copia de la

Ordenanza Núm. 59 y que nunca se le informó de la existencia de la Ordenanza Núm. 18. Además, aduce que las referidas ordenanzas son nulas por no haber sido debidamente publicadas conforme lo establece la ley.

Por su parte, el peticionario sostiene que la Ordenanza Núm. 59 entró en vigor, para fines del cobro de arbitrios de construcción, independientemente de que no haya sido publicada conforme a las exigencias que la Ley de Municipios Autónomos, supra, impone a las ordenanzas que contienen una sanción penal. En apoyo de su contención, señala que el Art. 2.007 de la Ley de Municipios Autónomos, *supra*, establece expresamente que "en el caso de que en una revisión judicial se deje sin efecto una ordenanza con sanción penal, se entenderá que solo la sanción penal quedara sin efecto".

Ciertamente, convenimos con el Tribunal de Apelaciones en que el incumplimiento con el procedimiento de aprobación de la ordenanza por parte del municipio, es un criterio que acarrea la ineficacia de la sanción penal contenida en esta. En ese sentido, colegimos que el foro intermedio actuó correctamente en su interpretación de la Ley de Municipios Autónomos, *supra*, al determinar que es indispensable la publicación tanto en un periódico de circulación regional como en uno de circulación general.

Ahora bien, entendemos que erró el foro apelativo intermedio al devolver el caso al Tribunal de Primera instancia para que determinara si ese hecho es suficiente

para anular la aludida Ordenanza Núm. 59, en cuanto al cobro de los arbitrios de construcción que en ella se establecen. No podemos coincidir con una interpretación que obvia el texto claro de la ley, el cual provee para que la declaración de ineficacia tenga efecto sobre la sanción penal únicamente. Así pues, somos del criterio de que debe quedar vigente el remanente de la Ordenanza Núm. 59, en lo que no corresponda a la sanción penal declarada ineficaz. Resolver lo contrario, conllevaría la revocación de un estatuto esencial para la tramitación de los proyectos de construcción del municipio.

Bajo el crisol doctrinario anteriormente expuesto, colegimos que el propósito de la Ley Núm. 81, *supra*, es otorgar facultades de gobierno a los municipios para facilitar la tramitación y fiscalización de las obras de construcción que han de realizarse dentro de sus límites territoriales. Con el fin de preservar esta política pública, colegimos que la disposición contenida en el Art. 2.007 de la Ley de Municipios Autónomos debe ser interpretada de forma literal, en aras de sostener la validez de las ordenanzas municipales.

Conviene puntualizar, que ante una ley clara y libre de toda ambigüedad, no debemos menospreciar su letra y contenido. No podemos coincidir con la determinación emitida por el Tribunal de Apelaciones, en la cual interpreta de forma aislada las disposiciones de la Ley Núm. 81. De igual forma, no nos persuaden los argumentos

esgrimidos por el recurrido, más bien los interpretamos como un intento de crear un subterfugio para evitar el pago de las contribuciones impuestas por el municipio.

Conforme a la discusión precedente, es menester interpretar este estatuto integradamente, armonizando el significado de sus distintas secciones y respetando la intención de la Asamblea Legislativa al redactar el mismo. Nos vemos impedidos de invalidar una ordenanza municipal en su totalidad por un tecnicismo en la interpretación de un artículo de la ley que provee para su creación.

Por último, aunque el foro de instancia determinó que no había controversia en que la Ordenanza Núm. 59 solo se publicó en el periódico El Vocero, denegó la moción de sentencia sumaria del recurrido por entender que existen controversias sobre hechos materiales. No obstante, el Tribunal de Apelaciones revocó esta determinación fundamentándose en que "el TPI tenía que adjudicar la controversia que se le planteó a base de los hechos incontrovertidos".[14]

En consecuencia, devolvió el caso al foro primario "para que adjudique si el hecho de que la Ordenanza 59 sólo se publicó en un periódico de circulación general tiene el efecto de que la misma no ha entrado en vigor y, en consecuencia, si procede declarar ha lugar la reclamación de la peticionaria [Construcciones José Carro, S.E]".[15]

---

[14] Véase, Apéndice de la petición de *certiorari*, pág. 290.

[15] Id.

Resuelta la anterior controversia, concluimos que no existen hechos materiales que impidan adjudicar el pleito sumariamente. Por lo que coincidimos con el foro apelativo intermedio en que estamos ante un asunto que es susceptible de resolverse por la vía sumaria, en este caso, a favor del Municipio.

IV

Por los fundamentos antes expuestos, se revoca parcialmente la Sentencia recurrida. Por un lado, se confirma la determinación del foro apelativo intermedio en cuanto resolvió que incidió el foro primario al estimar que este caso no era uno susceptible de resolverse por la vía sumaria. Por otro lado, se revoca el dictamen impugnado en cuanto devolvió el caso al Tribunal de Primera Instancia para que determinara qué efecto tiene, si alguno, que la Ordenanza Núm. 59 solo se publicó en un periódico. A tenor con los principios que anteceden, un incumplimiento de esa naturaleza no habría librado al recurrido del pago por concepto de arbitrios requerido por el Municipio; que es independiente a la sanción penal dispuesta en la referida ordenanza. En consecuencia, se mantiene en vigor el arbitrio impuesto por el municipio y se declara con lugar la moción de sentencia sumaria presentada por este.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Construcciones José Carro, S.E. | Certiorari |
| Recurrido | |
| | CC-2010-1006 |
| v. | |
| Municipio Autónomo de Dorado, *et al* | |
| Peticionario | |

SENTENCIA

En San Juan, Puerto Rico, a 9 de julio de 2012.

Por los fundamentos antes expuestos, se revoca parcialmente la Sentencia recurrida. Por un lado, se confirma la determinación del foro apelativo intermedio en cuanto resolvió que incidió el foro primario al estimar que este caso no era uno susceptible de resolverse por la vía sumaria. Por otro lado, se revoca el dictamen impugnado en cuanto devolvió el caso al Tribunal de Primera Instancia para que determinara qué efecto tiene, si alguno, que la Ordenanza Núm. 59 solo se publicó en un periódico. A tenor con los principios que anteceden, un incumplimiento de esa naturaleza no habría librado al recurrido del pago por concepto de arbitrios requerido por el Municipio; que es independiente a la sanción penal dispuesta en la referida ordenanza. En consecuencia, se mantiene en vigor el arbitrio impuesto por el municipio y se declara con lugar la moción de sentencia sumaria presentada por este.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino. El Juez Asociado señor Feliberti Cintrón no interviene.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo