El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
Comparece el Municipio Autónomo de Dorado (en ade-lante Municipio o peticionario) y nos solicita que revoque-mos una Sentencia del Tribunal de Apelaciones que modi-ficó orna Resolución emitida por el Tribunal de Primera Instancia. Mediante el referido dictamen, el foro primario declaró “no ha lugar” las solicitudes de sentencia sumaria presentadas tanto por el peticionario como por Construc-ciones José Carro, S.E. El foro apelativo intermedio con-cluyó que procedía la adjudicación de la controversia su-mariamente a base de los hechos incontrovertidos. En vista de ello, devolvió el caso al Tribunal de Primera Ins-tancia para que determinara qué efecto tiene que la orde-nanza municipal que impone el arbitrio de construcción en controversia solo se haya publicado en un periódico de cir-culación general.
Este recurso nos brinda la oportunidad de interpretar por primera vez el inciso (g) del Art. 2.007 de la Ley de Municipios Autónomos, Ley Núm. 81-1991 (21 L.P.R.A. see. 4057(g)), en adelante Ley de Municipios Autónomos o Ley Núm. 81, referente al pago de arbitrios de construcción. Específicamente, el efecto que conlleva declarar ineficaz una ordenanza municipal que, a su vez, contiene una cláu-sula de sanción penal por incumplimiento. Por considerar que la declaración de ineficacia que realice un tribunal solo *118 tiene el efecto de anular la sanción penal contenida en la ordenanza, y no su totalidad, revocamos la determinación del foro a quo. Veamos los antecedentes fácticos que dieron génesis a la controversia que nos ocupa.
I
La Autoridad para el Financiamiento de la Infraestruc-tura (AFI) adjudicó una subasta a favor de Construcciones José Carro, S.E. a un costo de $29,020,000. El proyecto de construcción tiene como objetivo el control de inundaciones y la canalización del Río La Plata dentro de la demarcación territorial del Municipio de Dorado.
Previo a comenzar los trabajos de construcción, el Mu-nicipio le requirió al recurrido el pago de $1,451,000 por arbitrios de construcción. Ello, conforme lo establecido en la Ordenanza Municipal Núm. 59, serie 1997 — 1998 (Orde-nanza 59),(1) según enmendada por la Ordenanza Municipal Núm. 18, serie 2000-2001 (Ordenanza 18). Esta última aumentó el por ciento del arbitrio de construcción estable-cido originalmente en la Ordenanza 59. El recurrido, bajo protesta, pagó la referida suma y solicitó reconsideración al Municipio, la cual fue denegada.
Posteriormente, el recurrido presentó una demanda ante el Tribunal de Primera Instancia. En esta, afirmó que realizó el pago bajo protesta y, además, solicitó que la or- *119 denanza se declarara ineficaz. En apoyo a su posición, alegó que las Ordenanzas 59 y 18 no se publicaron con-forme a la Ley de Municipios Autónomos, y, por ende, que estas nunca entraron en vigor. Fundamenta su alegación en el hecho de que la Ordenanza 59 tan solo fue publicada en un periódico de circulación general, obviando así el re-quisito de publicación en uno de circulación regional. Por ello, adujo que no se le podían aplicar las ordenanzas mu-nicipales mencionadas y, en consecuencia, correspondía que se le devolviera el dinero pagado por arbitrios.
Luego de varias incidencias procesales, el 22 de febrero de 2010, el Municipio solicitó que se dictara sentencia su-maria a su favor. Argüyó que la cantidad cobrada por arbi-trios municipales resultó del cálculo dispuesto por la Orde-nanza 18. Esta establece un cinco por ciento de impuesto sobre el precio total de la obra. Esbozó, además, que las leyes locales no requerían ser publicadas para que surtie-ran efecto y que, específicamente, la Ley de Municipios Au-tónomos no impone la obligación de publicar las ordenan-zas referentes a arbitrios municipales.
En respuesta a lo anterior, Construcciones José Carro, S.E. se opuso a esta solicitud y, a su vez, solicitó sentencia sumaria a su favor. Alegó que la falta de notificación de las ordenanzas tuvo el efecto de impedir que estas cobraran vigencia porque no fueron aprobadas conforme a derecho. Además, que la Ley de Municipios Autónomos establece que las ordenanzas que impongan sanciones penales se de-berán publicar en un periódico de circulación general y en uno de circulación regional, requisito que no se cumplió con respecto a la Ordenanza 59, la cual imponía una sanción penal.
Tiempo después, el 23 de junio de 2010, el foro primario emitió una Resolución por la cual denegó resolver el caso mediante sentencia sumaria. Fundamentó su decisión en la existencia de hechos materiales que impiden adjudicar el pleito sumariamente y en que “resolver que la orde- *120 nanza no fue debidamente publicada conllevaría dejar sin efecto la intención del legislador”.(2) Inconforme con esta determinación, el recurrido acudió ante el Tribunal de Ape-laciones mediante recurso de certiorari. Adujo que el foro primario erró al sostener la vigencia de las aludidas orde-nanzas, aun cuando estas no fueron publicadas con arreglo a la ley y a derecho. Además, señaló que la consecuencia de este incumplimiento es la ineficacia total de la ordenanza.
Consecuentemente, mediante Sentencia de 23 de sep-tiembre de 2010, el foro apelativo intermedio modificó el dictamen del Tribunal de Primera Instancia. Concluyó que el hecho de la falta de publicación de la Ordenanza 59 no estaba en controversia, por lo que existían hechos suficien-tes para emitir una sentencia sumaria. No conteste con esta determinación, el Municipio presentó una moción de reconsideración en la cual alegó que, aunque no se hubiese publicado correctamente la referida ordenanza, esto solo conllevaba la nulidad de la sanción penal contenida en esta y no de la ordenanza en su totalidad. Fundamentó dicho argumento en la Ley Núm. 199-1996, promulgada para añadir el Art. 2.007 a la Ley de Municipios Autónomos. Mediante Resolución de 13 de octubre de 2010, el Tribunal de Apelaciones rechazó revisar su dictamen.
Nuevamente inconforme, el Municipio comparece ante nos mediante recurso de certiorari para señalar que el foro apelativo intermedio erró en lo siguiente:
Erró el [Tribunal de Apelaciones] en su Sentencia al revocar la Resolución del [Tribunal de Primera Instancia] y expresar que la Ordenanza Núm. 59[,] supra, carece de validez debido a que no fue publicada conforme a derecho. Petición de certiorari, pág. 11.
En esencia, la posición del Municipio es que, de haberse cumplido el mandato de la Ley de Municipios Autónomos sobre cómo publicar una ordenanza que contiene una san- *121 ción penal, solo corresponde que se declare inválida dicha sanción y no el resto de la ordenanza. Por lo tanto, solicita que mantengamos en vigor, y se aplique al caso de autos, las disposiciones según las cuales se realizó el cobro de arbitrios en cuestión.
Atendido el recurso de certiorari presentado por el peti-cionario, el 8 de abril de 2011 expedimos el auto solicitado. Contando con la comparecencia de ambas partes, procede-mos a resolver.
II
A. La Ley de Municipios Autónomos, Ley Núm. 81-1991 (21 L.P.R.A. see. 4001 et seq.), se creó con el propósito de garantizar a los municipios un mayor grado de autonomía fiscal y gobierno propio para atender eficazmente las necesidades y el bienestar de sus habitantes. Pfizer Pharm. v. Mun. de Vega Baja, 182 D.P.R. 267, 286 (2011). Conforme a esta política pública, esta ley regula las facultades de los municipios para lograr el mejor aprovechamiento y la fiscalización de las obras que se realicen dentro de sus límites territoriales.
No obstante, aunque los municipios carecen de poder inherente para imponer tributos, la Asamblea Legislativa puede delegarles esa facultad mediante mandato claro y expreso. HBA Contractors v. Mun. de Ceiba, 166 D.P.R. 443, 453-454 (2005). A esos efectos, la Constitución de Puerto Rico establece que “[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido”.(3)
Además, la creación de la Ley de Municipios Autónomos persigue descentralizar el gobierno y encarnar principios *122 cardinales democráticos de participación ciudadana. Es por esto que se ha denominado al municipio como una “ ‘unidad básica para la administración comunitaria’ ”. Torres Santiago v. Mun. de Coamo, 170 D.P.R. 541, 548 (2007). La implementación de esta política pública descen-tralizadora resultó en un grado mayor de autonomía, me-jores herramientas financieras y una ampliación del marco de acción del municipio en espacios que le estaban vedados o grandemente limitados en el pasado. Id.(4)
Cónsono con lo anterior, el Art. 2.002 de la Ley de Municipios Autónomos(5) dispone que los municipios pueden, entre otras facultades, imponer contribuciones o arbitrios sobre las obras de construcción que se realicen dentro de sus límites territoriales. Este Artículo preceptúa, en lo pertinente, lo siguiente:
Además de las que se dispongan en otras leyes, el municipio podrá imponer y cobrar contribuciones o tributos por los con-ceptos y en la forma que a continuación se establece:
(d) Imponer y cobrar contribuciones, derechos, licencias, ar-bitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables dentro de los límites territoriales del muni-cipio, compatibles con el Código de Rentas Internas y las leyes del Estado Libre Asociado de Puerto Rico, incluyendo sin que se entienda como una limitación, por el estacionamiento en vías públicas municipales, por la apertura de establecimientos comerciales, industriales y de servicios, por la construcción de obras y el derribo de edificios, por la ocupación, el uso y la intervención de vías públicas y servidumbres municipales y por el manejo de desperdicios.
Toda obra de construcción dentro de los límites territoriales de un municipio, realizada por una persona natural o jurídica privada, o que sea llevada a cabo por una persona natural o jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una agencia o instrumentalidad del *123 Gobierno Central o municipal o del gobierno federal, inclu-yendo aquella obra que no requiera la solicitud o expedición de un permiso por la Administración de Reglamentos y Permisos o por un municipio autónomo, deberá pagar arbitrio de cons-trucción correspondiente, previo al comienzo de dicha obra. (Enfasis nuestro).
El término arbitrio de construcción lo define la propia Ley de Municipios Autónomos como “aquella contribución impuesta por los municipios a través de una ordenanza municipal aprobada con dos terceras (2/3) partes [de la legislatura municipal] para ese fin, la cual recae sobre el derecho de llevar a cabo una actividad de construcción o una obra de construcción dentro de los límites territoriales del municipio”. (6) En ese sentido, no existe otra obligación impuesta al municipio para la implementación de un arbitrio de construcción que no sea su aprobación por dos terceras partes de la legislatura municipal. Además, el Art. 5.007(f) de la Ley Núm. 81, supra,(7) dispone el término que habrá de transcurrir para que cobre vigencia una ordenanza municipal al establecer que “[t]oda ordenanza y resolución regirá desde la fecha que se indique en su cláusula de vigencia, excepto en el caso de las ordenanzas que establezcan penalidades y multas administrativas las cuales empezarán a regir a los diez (10) días de su publicación en la forma dispuesta en este subtítulo”.
Por otro lado, el Art. 2.003 de la Ley de Municipios Autónomos, supra,(8) dispone que toda ordenanza que imponga una sanción penal “comenzar[á] a regir diez (10) días después de su publicación en uno o más periódicos de circulación general y de circulación regional, siempre y cuando el municipio se encuentre dentro de la región servida por dicho periódico”. En este sentido, la ley le impone al municipio la obligación de publicar la ordenanza en *124 aquellos casos en que contenga disposiciones de carácter penal. Específicamente, deberá ser publicada en un perió-dico de circulación general y en uno de circulación regional. Es decir, para que la sanción penal cobre vida, deberá cum-plir con los requisitos establecidos estatutariamente.
Conviene puntualizar que, en su concepción, el precepto legal anterior proveía para que el municipio escogiera si cumplir con el requisito de publicar en un periódico de cir-culación general o en uno de publicación regional. Sin embargo, antes de aprobarse la ley, este cuerpo legal cambió la letra “o” por la letra “y”.(9) Por ello, no cabe duda de que la intención legislativa fue concretar como requisito indispensable para aprobar una ordenanza municipal que con-tenga una sanción penal, el que esta se publique tanto en un periódico de circulación general como en uno de circu-lación regional.
El estado de derecho vigente para imponer y cobrar arbitrios ha sufrido varios cambios y modificaciones a través de numerosas enmiendas a la Ley Núm. 81, supra. Entre estas, se encuentra la Ley Núm. 199-1996, la cual se promulgó para añadir el Art. 2.007 a la Ley de Municipios Autónomos, supra. La referida ley establece un procedimiento para determinar el arbitrio de construcción, su imposición, cobro, exenciones, reclamaciones, rembolsos, sanciones administrativas y penales, y la facultad para formalizar acuerdos por escrito.
El citado artículo establece lo siguiente:
Pago del arbitrio de construcción — Reclamaciones y otros
(g) Incumplimiento.—
(2) Sanción penal — Toda persona que voluntariamente, deliberada y maliciosamente ofreciera información falsa, a sa- *125 hiendas de su falsedad, respecto al valor de la obra que genera una actividad de construcción tributable, en cualquiera de las declaraciones deben presentarse ante el Director de Finanzas en conformidad con este subcapítulo; o que deliberada, volun-taria y maliciosamente dejare de rendir la declaración y co-menzare la actividad de construcción o dejare de pagar el ar-bitrio y comenzare la actividad, en adición e independiente-mente de cualquier disposición administrativa o penal aplica-ble, convicto que fuere, será castigado con una multa no mayor de quinientos [dólares] ($500) o con una pena de reclusión no mayor de seis (6) meses o ambas penas a discreción del tribunal. En el caso de que en una revisión judicial se deje sin efecto una ordenanza con sanción penal, se entenderá que sólo la sanción penal quedará sin efecto. (Enfasis nuestro).(10)
En armonía con lo anterior, es necesario señalar que la sanción penal impuesta por los municipios equivale a una privación de la propiedad de una persona. Por lo tanto, requiere que al implementarse se cumpla con las garantías del debido proceso de ley. Este requisito de publicación tiene el efecto de informar a la ciudadanía de las ordenan-zas aprobadas; así cumple con la máxima constitucional de que nadie será privado de su propiedad sin el debido pro-ceso de ley.
Respecto al efecto que conlleva incumplir con los requi-sitos de publicación, la ley es clara. "En el caso de que en una revisión judicial se deje sin efecto una ordenanza con sanción penal, se entenderá que sólo la sanción penal que-dará sin efecto”. (11) En síntesis, su incumplimiento resulta en la nulidad de la sanción penal y no de la ordenanza en su totalidad.
Analizado el marco estatutario provisto para que los municipios impongan arbitrios de construcción mediante ordenanzas municipales, pasemos a examinar los precep-tos reconocidos en nuestro ordenamiento jurídico que apli- *126 can a la interpretación de las leyes y al principio de her-menéutica legal.
B. Como es sabido, aun la más clara de las leyes requiere interpretation.(12) Nuestro ordenamiento jurídico consigna determinadas normas de hermenéutica legal, las cuales, en mayor o menor medida, se imponen como principios rectores del ejercicio de la función adjudicativa de los tribunales. Entre tales principios, se destaca aquel contenido en el Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, el cual dispone que “[c]uando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu”.
Con el propósito de remediar las controversias y adjudicar los derechos que corresponden a las partes en un pleito, los tribunales tenemos la ineludible labor de interpretar los estatutos aplicables a la situación de hechos en particular que nos atañe. R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. 1, pág. 241. Este proceso de interpretación, que recibe el nombre de hermenéutica legal, conlleva auscultar, averiguar, precisar y determinar cuál fue la voluntad legislativa al aprobar la ley. íd. Así, pues, es ampliamente aceptado el entendido de que solo hay una regla de interpretación que es absolutamente invariable y esta es que se debe descubrir y hacer cumplir la verdadera intención y el deseo del poder legislativo. Srio. del Trabajo, etc. v. P.R. Cereal Extracts, Inc., 83 D.P.R. 267, 275-276 (1961).
Como corolario de la doctrina, los tribunales, al ejercer su función interpretativa de la ley, deberán considerar el propósito o intención de la Asamblea Legislativa al *127 aprobarla. Ello, para propiciar que se obtenga el resultado querido originalmente por el legislador. Piovanetti v. S.L.G. Touma, S.L.G. Tirado, 178 D.P.R. 745, 767 (2010); Piñero v. A.A.A., 146 D.P.R. 890, 898 (1998); García v. E.L.A., 146 D.P.R. 725, 733 (1998). Hemos reiterado ante-riormente que los tribunales, como intérpretes finales de las leyes, nos encontramos en la obligación de lograr un resultado que se ajuste al propósito y a la política pública que inspiró a la Legislatura al aprobarlas. IFCO Recycling v. Aut. Desp. Sólidos, 184 D.P.R. 712 (2012); Consejo Titulares v. DACo, 181 D.P.R. 945, 958 (2011). Esta normativa tiene como objetivo lograr que, finalmente, la determina-ción que el tribunal realice asegure el resultado que el le-gislador quiso obtener al aprobar la ley. Id.
A tenor con todo lo ánterior, señalan los tratadistas Ber-nier y Cuevas Segarra que
... la intención legislativa de una ley no debe buscarse en una frase aislada o en una de sus secciones; sino en el contexto de todo el estatuto, tomando en cuenta el propósito seguido por el legislador. Por eso, un artículo de una ley no debe interpre-tarse aisladamente, sino considerando la ley en su totalidad. Bernier y Cuevas Segarra, op. cit., pág. 245.
La voluntad de la Asamblea Legislativa al adoptar el estatuto queda reflejada a través del historial legislativo de la disposición legal. Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 539 (1999). Primeramente, debemos acudir a la exposición de motivos de la ley, la cual, como regla general, recoge el propósito que inspiró su creación. íd. Otra fuente que puede clarificar la intención del legislador en la apro-bación de la ley son las manifestaciones de los miembros del cuerpo durante el trámite legislativo. Bernier y Cuevas Segarra, op. cit., pág. 242. Esto incluye los datos recogidos en el informe emitido por la comisión legislativa que estu-dió el proyecto de ley y las expresiones de los legisladores en el hemiciclo durante la sesión de aprobación del esta-tuto, según recogidas en el Diario de Sesiones. Id.
*128 Examinadas las normas aplicables a la interpretación de las leyes y al principio de hermenéutica legal, pasemos a delinear los contornos de la figura procesal de sentencia sumaria.
C. Las Reglas de Procedimiento Civil fueron concebidas para asegurar “una solución ... rápida y económica de todo procedimiento”. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. A tales efectos, la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, preceptúa lo referente al mecanismo de la sentencia sumaria. El propósito principal de la moción de sentencia sumaria es propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales. Por su ánimo dinámico no ameritan la celebración de un juicio en su fondo, ya que lo único que resta es dirimir una controversia de derecho. Quest Diagnostics v. Mun. San Juan, 175 D.P.R. 994 (2009). Sobre este particular, el profesor Javier Echevarría nos indica que “[l]a sentencia sumaria constituye un mecanismo procesal mediante el que se le confiere discreción al tribunal para dictar sentencia sobre la totalidad de una reclamación, o sobre cualquier controversia comprendida en ésta, sin la necesidad de celebrar una vista evidenciaría”. J.A. Echevarría Vargas, Procedimiento civil puertorriqueño, Eds. Situm, 2010, pág. 204. Usada correctamente, la sentencia sumaria es un valioso mecanismo procesal para descongestionar los calendarios judiciales. Carpets & Rugs v. Tropical Reps, 175 D.P.R. 615, 638 (2009).
Por su parte, la Regla 36.3 (32 L.P.R.A. Ap. III) dispone que para dictarse sentencia sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, surja que no hay controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, se debe dictar sentencia sumaria a favor de la parte promovente. Ramos Pérez v. *129 Univisión, 178 D.P.R. 200 (2010); González Aristud v. Hosp. Pavia, 168 D.P.R. 127 (2006); Luan Invest. Corp. v. Rexach Const. Co., 152 D.P.R. 652 (2000).
Respecto a la adjudicación por la vía sumaria, hemos señalado que cuando “se present[a] un caso que involucrfa] rma acción que requiera algún elemento subjetivo de intención, propósito mental o negligencia, o cuando el factor de credibilidad es esencial, no [se] impide su concesión si no existe controversia en cuanto a los hechos materiales”. Abrams Rivera v. E.L.A., 178 D.P.R. 914, 933 (2010). Según manifiesta el profesor Cuevas Segarra en su tratado de cerecho procesal civil,
[a]unque un Tribunal Apelativo debe utilizar los mismos crite-rios que el Tribunal sentenciador al determinar si procede dic-tar sentencia sumaria, está limitado de dos maneras: sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron pre-sentadas oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. El Tribunal Apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta. J. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. J.T.S., 2011, T. III, pág. 1042.(13)
Solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986). Cuando no existe una clara certeza sobre todos los hechos materiales en la controversia, no procede una sentencia sumaria. Id. En ocasiones anteriores hemos dispuesto que un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sus- *130 tantivo aplicable. Ramos Pérez v. Univisión, supra, pág. 213, citando a J.A. Cuevas Segarra, Tratado de derecho procesal civil, San Juan, Pubs. J.T.S., 2000. T. I, pág. 609. La Regla 36.1 de Procedimiento Civil de 2009 se refiere a estos hechos como “esenciales y pertinentes”. 32 L.P.R.A. Ap. V.
De igual forma, hemos expresado que “cualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes”. (Enfasis suprimido). Ramos Pérez v. Univisión, supra, pág. 214. Toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a la misma. Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538 (1991); Corp. Presiding Bishop CJC of LDS v. Purcell, supra. Al evaluar una moción de sentencia sumaria, los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos de los cuales surjan admisiones hechas por las partes, sean o no parte de la solicitud de sentencia sumaria. Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).
Además, la sentencia sumaria “vela adecuadamente por el balance entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles”. Ramos Pérez v. Univisión, supra, pág. 220. Ahora bien, “el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley”. Mgmt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599, 611 (2000).
Acorde con lo anteriormente expuesto, debe quedar claro que si los hechos no están en controversia y el pleito solo presenta una cuestión de derecho, procede disponer *131 del asunto mediante sentencia sumaria. En lo pertinente, en Piñero v. A.A.A., supra, estimamos procedente resolver por la vía sumaria una controversia de derecho que ver-saba sobre la interpretación de un estatuto y la validez de una resolución emitida por la Junta de Gobierno de la A.A.A.
Habiendo examinado el Derecho aplicable a los hechos del caso ante nos, pasemos a resolver las controversias ini-cialmente enunciadas.
III
En el presente caso, la parte recurrida alega que el cóm-puto de los arbitrios de construcción no fue calculado correctamente. Arguye que el tipo contributivo que le aplica es escalonado de cinco, cuatro y tres por ciento. Por su parte, el municipio indicó que impuso un arbitrio fijo de cinco por ciento, conforme a lo establecido en la Ordenanza 18. Además, señaló que el porciento escalonado pertenece a la Ordenanza 59, y que esta cifra fue expresamente en-mendada por la Ordenanza 18.
Específicamente, la Ordenanza Núm. 59 se creó para imponer y cobrar arbitrios en concepto de construcciones. En la misma, se estableció un pago de cinco por ciento del costo total de la obra de un millón de dólares, los próximos cinco millones al cuatro por ciento y todo exceso de seis millones al tres por ciento. A su vez, la Ordenanza 18 fue implantada para revisar el tipo contributivo de arbitrios aplicables a ciertos proyectos de construcción y para en-mendar la Ordenanza 59. En lo pertinente, esta ordenanza enmendó el porciento que se pagaría en las obras de cons-trucción a uno fijo de cinco por ciento. Como mencionamos anteriormente, la Ley de Municipios Autónomos le concede a los municipios la facultad de imponer arbitrios a toda obra de construcción que se realice dentro de sus límites territoriales. Esta facultad del municipio existe indepen- *132 dientemente de cualquier otra contribución o tarifa dis-puesta en otras leyes.
Del expediente se deduce que Construcciones José Carro, S.E., alega que fue inducido a error por empleados del Municipio de Dorado. Que se le entregó copia de la Orde-nanza 59 y que nunca se le informó de la existencia de la Ordenanza 18. Además, aduce que las referidas ordenan-zas son nulas por no haber sido debidamente publicadas conforme lo establece la ley. Por su parte, el peticionario sostiene que la Ordenanza 59 entró en vigor, para fines del cobro de arbitrios de construcción, independientemente de que no haya sido publicada conforme a las exigencias que la Ley de Municipios Autónomos impone a las ordenanzas que contienen una sanción penal. En apoyo de su conten-ción, señala que el Art. 2.007 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4057(g)(2), establece expresa-mente que “[e]n el caso de que en una revisión judicial se deje sin efecto una ordenanza con sanción penal, se enten-derá que sólo la sanción penal quedara sin efecto”.
Ciertamente, convenimos con el Tribunal de Apelacio-nes en que el incumplimiento del municipio con el procedi-miento de aprobación de la ordenanza es un criterio que acarrea la ineficacia de la sanción penal contenida en esta. En ese sentido, colegimos que el foro intermedio actuó co-rrectamente en su interpretación de la Ley de Municipios Autónomos al determinar que es indispensable la publica-ción tanto en un periódico de circulación regional como en uno de circulación general.
Ahora bien, entendemos que erró el foro apelativo inter-medio al devolver el caso al Tribunal de Primera instancia para que determinara si ese hecho es suficiente para anu-lar la aludida Ordenanza 59, en cuanto al cobro de los ar-bitrios de construcción que en ella se establecen. No pode-mos coincidir con una interpretación que obvia el texto claro de la ley, el cual provee para que la declaración de ineficacia tenga efecto sobre la sanción penal únicamente. *133 Así, pues, consideramos que debe quedar vigente el rema-nente de la Ordenanza Núm. 59, en lo que no corresponda a la sanción penal declarada ineficaz. Resolver lo contrario conllevaría la revocación de un estatuto esencial para la tramitación de los proyectos de construcción del municipio.
Según el crisol doctrinario anteriormente expuesto, co-legimos que el propósito de la Ley Núm. 81, supra, es otor-gar facultades de gobierno a los municipios para facilitar la tramitación y fiscalización de las obras de construcción que se realicen dentro de sus límites territoriales. Con el fin de preservar esta política pública, colegimos que la disposi-ción contenida en el Art. 2.007(g)(2) de la Ley de Munici-pios Autónomos debe ser interpretada literalmente, en aras de sostener la validez de las ordenanzas municipales. Conviene puntualizar que ante una ley clara y libre de toda ambigüedad, no debemos menospreciar su letra y contenido. No podemos coincidir con la determinación emi-tida por el Tribunal de Apelaciones, en la cual interpreta aisladamente las disposiciones de la Ley Núm. 81. De igual forma, no nos persuaden los argumentos esgrimidos por el recurrido, más bien los interpretamos como un intento de crear un subterfugio para evitar el pago de las contribucio-nes que le impuso el municipio.
Conforme a la discusión precedente, es menester inter-pretar este estatuto integradamente, armonizando el sig-nificado de sus distintas secciones y respetando la inten-ción de la Asamblea Legislativa al redactarlo. Nos vemos impedidos de invalidar una ordenanza municipal en su to-talidad por un tecnicismo en la interpretación de un artí-culo de la ley que provee para su creación.
Por último, aunque el foro de instancia determinó que no había controversia en que la Ordenanza 59 solo se pu-blicó en el periódico El Vocero, denegó la moción de senten-cia sumaria del recurrido por entender que existen contro-versias sobre hechos materiales. No obstante, el Tribunal de Apelaciones revocó esta determinación fundamentán-
*134 dose en que “el TPI tenía que adjudicar la controversia que se le planteó a base de los hechos incontrovertidos”.(14) En consecuencia, devolvió el caso al foro primario “para que adjudique si el hecho de que la Ordenanza 59 sólo se pu-blicó en un periódico de circulación general tiene el efecto de que la misma no ha entrado en vigor y, en consecuencia, si procede declarar ha lugar la reclamación de la peticiona-ria [Construcciones José Carro, S.E]”.(15)
Resuelta la anterior controversia, concluimos que no existen hechos materiales que impidan adjudicar el pleito sumariamente, por lo que coincidimos con el foro apelativo intermedio en que estamos ante un asunto que es susceptible de resolverse por la vía sumaria, en este caso, a favor del Municipio.
IV
Por los fundamentos antes expuestos, se revoca parcial-mente la Sentencia recurrida. Por un lado, se confirma la determinación del foro apelativo intermedio en cuanto re-solvió que incidió el foro primario al estimar que este caso no era susceptible de resolverse por la vía sumaria. Por otro lado, se revoca el dictamen impugnado en cuanto devolvió el caso al Tribunal de Primera Instancia para que determi-nara qué efecto tiene, si alguno, que la Ordenanza 59 solo se publicó en un periódico. De acuerdo con los principios que anteceden, un incumplimiento de esa naturaleza no ha-bría librado al recurrido del pago en concepto de los arbi-trios requeridos por el Municipio, que es independiente a la sanción penal dispuesta en la referida ordenanza. En con-secuencia, se mantiene en vigor el arbitrio impuesto por el Municipio y se declara “con lugar” la moción de sentencia sumaria presentada por este.

*135
Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez no intervino. El Juez Asociado Señor Feliberti Cintrón no interviene.

 La referida ordenanza contiene una sanción penal que dispone como sigue en su Sección 21ra, pág. 11:
“B. Sanción Penal: Toda persona que voluntariamente, deliberada y maliciosa-mente ofreciera información falsa a sabiendas de su falsedad, respecto al valor de la obra que genera una actividad de construcción tributable, en cualquiera de las de-claraciones deben presentarse ante el Director de Finanzas en conformidad con esta Ordenanza o que deliberada, voluntaria y maliciosamente dejare de rendir la decla-ración y comenzare la actividad de construcción o dejare de pagar el arbitrio y co-menzare la actividad, en adición e independientemente de cualquier disposición ad-ministrativa o penal aplicable, convicto que fuere, será castigado con una multa no mayor de $500.00 con una pena de reclusión no mayor de seis (6) meses o ambas penas a discreción del tribunal. En el caso de que en una revisión judicial se deje sin efecto una Ordenanza con sanción penal, se entenderá que sólo la sanción penal quedará sin efecto”. Apéndice de la Petición de certiorari, págs. 151-152.

 Apéndice de la Petición de certiorari, pág. 271.

 Art. VI, Sec. 2, Const. P.R., L.P.R.A., Tomo 1, ed. 2008, pág. 420.

 Véanse, además: Exposición de Motivos y Art. 1.002 de la Ley de Municipios Autónomos, 1991 (Parte 1) Leyes de Puerto Rico 459; López v. Mun. de Mayagüez, 158 D.P.R. 620 (2003); Mun. San Juan v. Banco Gub. Fomento, 140 D.P.R. 873, 885 (1996).

 21 L.P.R.A. see. 4052.

 21 L.P.R.A. sec. 4001(cc).

 21 L.P.R.A. sec. 4207(f).

 21 L.P.R.A. see. 4053.

 Informe de Conferencia del Sustitutivo del Senado al P. de la C. 1296 de 29 de agosto de 1991, 6ta Sesión Ordinaria, lima Asamblea Legislativa, pág. 2.

 Véase Art. 2.007(g)(2) de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4057(g)(2).

 Íd.

 Véanse: E.L.A. v. Frig, y Alm. del Turabo, Inc., 155 D.P.R. 27 (2001); Nadal v. Depto. Rec. Nat, 150 D.P.R. 715 (2000).

 Véase, además, Vera v. Dr. Bravo, 161 D.P.R. 308 (2004).

 Véase Apéndice de la Petición de certiorari, pág. 290.

 Íd.